**UNITED STATES of America,
Plaintiff-Appellee**

v.

**Shelby SCHWARTZ,
Defendant-Appellant.**

**No. 80–5479.**

United States Court of Appeals,
Eleventh Circuit.

Jan. 22, 1982.

Rehearing Denied Feb. 25, 1982.

24.  *See* 29 U.S.C. § 160(e).

Terrence L. LaBelle, Fort Lauderdale, Fla., for defendant-appellant.

Michael P. Sullivan, Asst. U. S. Atty., Miami, Fla., Carolyn L. Gaines, Atty., Appellate Section, Criminal Division, U. S. Dept. of Justice, Washington, D. C., for plaintiff-appellee.

Before MORGAN, HILL and KRAVITCH, Circuit Judges.

KRAVITCH, Circuit Judge:

Appellant Shelby Schwartz was convicted by a jury of aiding and abetting possession of cocaine with the intent to distribute in violation of 18 U.S.C. § 2 and 21 U.S.C. § 841(a)(1). Appellant contends that the evidence was insufficient to sustain his conviction. We disagree and affirm.

## I. Background

The evidence at trial showed that appellant, Raymond MacDonald, and Nicholas Corcodilos were involved in a scheme to smuggle cocaine from South America to the United States. In 1978, when their Columbian cocaine connection began to deteriorate, new supply arrangements were made with Gustavo Garcia-Godos in Peru. The transaction for which appellant was convicted began in early July, 1978, when a Drug Enforcement Administration [DEA]

informant in Peru, Iliana Ratos, contacted the DEA about a pending cocaine transaction. Ratos flew from Peru to Miami on July 15, 1978, and was met there by DEA agent Foley. Unknown to Ratos, she carried liquid cocaine in perfume and shampoo bottles she had been given in Peru. When later that evening Ratos attempted to use some of the perfume, she discovered that it caused a "numbing sensation" and immediately notified the DEA.

The following day Ratos called Natalia Suarez to arrange delivery of the cocaine. When Ratos and Suarez met later that day, Suarez paid Ratos $1,000 for one of the bottles of cocaine. Suarez was arrested immediately and then agreed to cooperate with the government. Suarez called Corcodilos and arranged a meeting at a Denny's restaurant to transfer the cocaine. The DEA, conducting surveillance of the restaurant, observed appellant and Corcodilos walk together from the rear parking lot and enter the restaurant. Appellant proceeded to the men's restroom, while Corcodilos went to the booth where Suarez was seated. Shortly thereafter appellant exited the restaurant and paced back and forth outside, occasionally looking back into the restaurant through the window. After the cocaine transfer was completed, Corcodilos walked out of the restaurant and both he and appellant were arrested. A search of appellant uncovered a piece of paper marked with names and dollar figures and a card on which was written a hotel reservation and the name Gustavo Garcia-Godos, along with Godos' address and telephone number.

Appellant was charged in sixteen counts of a twenty-six count indictment concerning the cocaine smuggling scheme. The transaction at issue here was charged in Count Twenty-six, aiding and abetting possession of cocaine with intent to distribute. At trial, MacDonald [1] testified that Garcia-Godos was the Peruvian cocaine connection and explained that the paper with the dol-

---

1. MacDonald had been arrested earlier for possession of cocaine and was serving a prison term at the time of trial.

lar figures was a list of cocaine-related and other debts that MacDonald had given Schwartz for Schwartz to pay out of profits from future cocaine deals. The government also introduced evidence that from May 29, 1978 to July 10, 1978 (five days prior to this transaction) 30 phone calls to Lima, Peru had been charged to appellant's phone. The prosecution further showed that prior to the transaction in question appellant had withdrawn large sums of money from a bank account listed in the name of Southern Graphics. Southern Graphics, however, did not operate a business in the Miami area and had only a post office box for an address.

During trial the district court granted appellant's motion for a judgment of acquittal on four counts of the indictment, and declared a mistrial as to four other counts. Of the eight counts submitted to the jury, appellant was acquitted of all but Count Twenty-six, relating to the July 15, 1978 cocaine sale. Appellant was sentenced to a prison term and this appeal followed.

## II. Sufficiency of the Evidence

[1] Appellant's sole argument on appeal is that the evidence relating to Count Twenty-six was insufficient to sustain his conviction.[2] We disagree. The test for reviewing sufficiency of the evidence is whether, viewing the evidence and all reasonable inferences therefrom in the light most favorable to the government, *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942), substantial evidence exists to support the verdict. *Hamling v. United States*, 418 U.S. 87, 124, 94 S.Ct. 2887, 2911, 41 L.Ed.2d 590 (1974); *United States v. Gray*, 659 F.2d 1296, 1302 (5th Cir. 1981).[3] Our recent precedents

have interpreted the "substantial evidence" test as requiring evidence which a reasonable jury could find inconsistent with every reasonable hypothesis of innocence. *E.g., United States v. Spradlen*, 662 F.2d 724, 726–727 (11th Cir. 1981); *United States v. Diaz*, 655 F.2d 580, 583 (5th Cir. 1981).

■ We find that the evidence here met this standard of sufficiency. To be convicted of aiding and abetting under 18 U.S.C. § 2 the accused must "assist the perpetrator of the crime while sharing in the requisite criminal intent." *United States v. Martinez*, 555 F.2d 1269, 1271 (5th Cir. 1977). In order to sustain the conviction, the prosecution must show that the defendant "associated himself with a criminal venture, participated in it as something he wished to bring about and sought by his actions to make it succeed." *United States v. Smith*, 631 F.2d 391, 395 (5th Cir. 1980). *See United States v. Hewitt*, 663 F.2d 1381, 1385 (11th Cir. 1981); *Martinez, supra*, at 1272. Moreover, in the context of a prosecution for aiding and abetting the possession of cocaine with intent to distribute, the government "must introduce evidence connecting defendant with both aspects of the crime, possession and intent to distribute." *United States v. Longoria*, 569 F.2d 422, 425 (5th Cir. 1978).

■ Appellant argues that the evidence on Count Twenty-six showed only that he was present at the scene of the crime, and that "mere presence" is insufficient to sustain a conviction for aiding and abetting. *E.g., United States v. Martinez, supra*, at 1271. Nevertheless, a jury need not ignore the fact of presence, and presence coupled with other evidence of guilt can be an ade-

---

2. Appellant contends that other damaging evidence admitted against him during trial should not be considered by us in reviewing the sufficiency of the evidence on Count Twenty-six because he was acquitted of eleven counts and granted a mistrial on four of the remaining five counts. The government, on the other hand, argues that the jury properly could consider all the evidence presented in convicting on Count Twenty-six. Because we conclude that the evidence admitted directly on Count Twenty-six was sufficient to sustain the conviction on that

count, we need not decide what other evidence the jury could have considered in reaching a guilty verdict. The appellant, moreover, does not allege that he suffered any prejudice because the jury heard evidence on counts as to which he was granted a mistrial or a directed verdict of acquittal.

3. The Eleventh Circuit, in the en banc case *Bonner v. Prichard*, 661 F.2d 1206 (11th Cir. 1981) adopted as precedent the decisions of the former Fifth Circuit.

quate basis for the jury to convict. *See United States v. Mazyak,* 650 F.2d 788 (5th Cir. 1981) (presence of crew on board ship with large quantity of contraband and lengthy voyage enough to sustain conspiracy conviction of crew); *United States v. Trevino,* 560 F.2d 194 (5th Cir. 1977) (appellant's presence in car with marijuana coupled with his attempt to hide key to trunk from Border Patrol sufficient to sustain aiding and abetting possession of marijuana charge).

The evidence here indicated more than "mere presence" on the part of Schwartz. His pacing back and forth outside the restaurant and looking inside were consistent with an inference that he was acting as "lookout" for the transaction [4] and thus knew what was happening inside. The search incident to his arrest produced a card with the name, address, and telephone number of the Peruvian cocaine connection, as well as a list of drug-related debts he was to pay from the profits of future cocaine deals. The 30 phone calls placed from Schwartz's phone to Lima, Peru, plus the fact Schwartz had withdrawn large sums of money from a bank account for a dormant business, bolstered the inference that he was involved in cocaine purchase and distribution transactions. Viewing the evidence as a whole, we find it sufficient for a jury to conclude that Schwartz associated himself with both the cocaine possession and distribution scheme, participated in both aspects of the crime, and by his actions as "lookout" sought to make the crime succeed. *See Martinez, supra,* at 1272. Accordingly, the conviction is affirmed.

AFFIRMED.

---

**4.** Appellant urges that he could not have been acting as a "lookout" because Corcodilos was seated with his back to appellant and hence appellant could not have signaled Corcodilos to warn him of any danger. Appellant, however, could have attracted the attention of Suarez, a participant in the cocaine deal whom appellant could not have known had that day become a government informant.