**UNITED STATES of America**

v.

**W.J. POSTON, Appellant.**

**No. 88–3178.**

United States Court of Appeals, District of Columbia Circuit.

Argued March 20, 1990.

Decided May 4, 1990.

---

Navron Ponds, Washington, D.C., for appellant.

Eric M. Acker, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., John R. Fisher, Helen M. Bollwerk, Mary Ellen Abrecht, and Leslie A. Blackmon, Asst. U.S. Attys., Washington, D.C., were on the brief for appellee.

Before RUTH BADER GINSBURG, SILBERMAN, and THOMAS, Circuit Judges.

Opinion for the Court filed by Circuit Judge THOMAS.

CLARENCE THOMAS, Circuit Judge:

W.J. Poston was charged with aiding and abetting the possession of phencyclidine (PCP) with intent to distribute, 18 U.S.C. § 2; 21 U.S.C. § 841(a), and with aiding and abetting the attempted distribution of PCP, 18 U.S.C. § 2; 21 U.S.C. § 846. After a two-day jury trial, he was convicted of the former charge, but acquitted of the latter. On appeal, Poston makes four arguments for reversing his conviction. Poston first claims that there is insufficient evidence to support his conviction for aiding and abetting his codefendant's posses-

sion of PCP with intent to distribute. Second, Poston alleges that the trial judge abused his discretion by denying a motion for a continuance of the trial. Third, Poston argues that his counsel rendered constitutionally ineffective assistance because he had too little time to prepare thoroughly for trial. Finally, Poston claims that he was denied due process of law when the government declined to request a reduction of his mandatory minimum sentence, since, following his arrest, a police officer had promised him that his cooperation would be rewarded. Finding no merit in any of these contentions, we affirm Poston's conviction.

I.

■ There is little dispute regarding the material facts. According to Poston's post-arrest statement, which was not contested at trial, he was talking with three men in a Southeast Washington parking lot on the afternoon of May 10, 1988. Another man, Anthony Young, approached the group and asked one of Poston's companions, Harold, if he had "anything." Appendix (App.) at 17. Harold said that he did, then left the other men. He returned five minutes later, carrying two PCP-filled soft drink bottles in a white bag, which he handed to Young. Poston then announced that he was leaving, and " 'Tony' [Young] asked if he could get a ride to Anacostia to serve 'White Boys.' " Id. Poston agreed to provide Young with a ride, knowing that Young was carrying PCP and that he intended to distribute it to a third party. Appellant's Brief (App. Br.) at 19–20.

Meanwhile, at a different location, the police were conducting surveillance of a public telephone booth from which would-be PCP buyers were known to contact sellers to arrange deals. App. at 60–61. After one individual used the phone in a manner suggesting that he was arranging a drug transaction, four police officers followed him as he drove to a nearby location and waited in his car. Id. at 61–66. After several minutes, a Nissan pickup truck, driven by Poston, approached. Id. at 150, 176. The truck's passenger, Anthony

Young, stepped out, gingerly carrying the soft drink bottles, which were wrapped in a blue sweatsuit. Young motioned to the man who had been waiting, indicating that the man should follow him into an alley. Poston did not leave the scene of the transaction, but remained in the truck. *Id.* at 153, 165. As Young entered the alley, Poston drove up to the next corner, out of sight of the alley, and stopped. *Id.* at 17, 153. Poston then drove around the block. *Id.* at 17, 154–55.

As the deal was being consummated, police officers charged into the alley, and Young and the would-be buyer fled. Young discarded the two bottles, which were later determined to contain PCP with a retail value of approximately $96,000. *Id.* at 69, 91, 123, 314. Young and the buyer eluded capture.[1] Poston, however, had returned in his truck to a corner near the alley, and was arrested. *Id.* at 17, 155, 166, 178, 202.

Poston claims that his conviction must be reversed because there was insufficient evidence to support a finding that he aided and abetted the possession of PCP with intent to distribute. He argues that the uncontroverted evidence indicates that Young obtained possession of the PCP *before* Poston became involved. He further asserts that no evidence adduced at trial suggested that he ever came into actual or constructive possession of the PCP. While conceding that he knew that Young intended to distribute PCP, App. Br. at 19–20, Poston contends that his involvement was limited merely to giving Young a ride to the site of the attempted transaction. He therefore asserts that, as a matter of law, his conviction for aiding and abetting Young's *possession* (as opposed to *distribution* ) of the PCP with intent to distribute cannot stand.[2]

As this court has noted, the aiding and abetting statute, 18 U.S.C. § 2, "has broad implications and is one of the most important in the United States Criminal Code." *United States v. Raper*, 676 F.2d 841, 848 (D.C.Cir.1982).[3] The statute codifies the deeply rooted common-law rule that those who intentionally assist a guilty principal may themselves be held liable as principals. Although possession is generally a passive offense, "nothing about drug-possession offenses is so distinctive as to remove them from the ambit of aiding-and-abetting doctrine." *United States v. Staten*, 581 F.2d 878, 886 (D.C.Cir.1978) (footnote omitted). In this circuit, the elements of aiding and abetting are: "(1) the specific intent to facilitate the commission of a crime by another; (2) guilty knowledge on the part of the accused; (3) that an offense was being committed by someone; and (4) that the accused assisted or participated in the commission of the offense." *Raper*, 676 F.2d at 849 (citations omitted). Poston does not dispute that in his case, the prosecution established the first three elements; he concedes his knowledge, his intent, and the fact that the underlying substantive offense was committed. App. Br. at 19–20. Instead, his principal contention is that his acts did not in any way assist or encourage Young's possession of PCP with intent to distribute. The critical inquiry for this court is whether the prosecution presented sufficient evidence at trial for a jury reasonably to find that Poston " 'in some sort associate[d] himself with the venture, that he participate[d] in it as in something that he wishe[d] to bring about, that he [sought] by his action to make it succeed.' " *Nye & Nissen v. United States*, 336 U.S. 613, 619, 69 S.Ct. 766, 770, 93 L.Ed. 919 (1949) (quoting *United States v. Peoni*, 100 F.2d 401, 402 (2d Cir.1938) (L. Hand, J.)).

---

1. The police subsequently arrested Young on an unrelated charge. Transcript of Suppression Hearing (Tr. Supp. Hrg.) at 1–12.

2. Poston concedes, as he must, that the evidence against him was sufficient for the jury to have convicted him of the charge of which he was acquitted: aiding and abetting Young's attempted *distribution* of PCP. App. Br. at 23.

3. The statute provides, in pertinent part, that "[w]hoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal." 18 U.S.C. § 2(a).

This court's role in assessing a sufficiency of the evidence claim on appeal is sharply circumscribed. We are not a second jury weighing the evidence anew and deciding whether or not we would vote to convict the defendant. Instead, our review is limited to determining "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *see also Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942) ("It is not for us to weigh the evidence or to determine the credibility of witnesses. The verdict of a jury must be sustained if there is substantial evidence, taking the view most favorable to the Government, to support it.").[4]

■ Poston invites us to constrict the scope of the aiding and abetting statute, as applied to possession offenses, by limiting liability to certain factual scenarios. First, Poston contends that, as a matter of law, he could not have aided or abetted Young's possession with intent to distribute because Young "purchased the PCP from a third party *prior to* requesting a ride from Appellant, and ... Appellant played no part in the co-defendant's acquisition of the drug." App. Br. at 20. Under this view, a possession offense can be aided or abetted only where the aider assists the principal in *obtaining* unlawful possession in the first instance. We reject this mechanical and cramped interpretation of 18 U.S.C. § 2. It is well-established that " 'possession with intent to distribute is a continuing offense....' " *United States v. Baskin,* 886 F.2d 383, 388 (D.C.Cir.1989) (quoting *United States v. Stitzer,* 785 F.2d 1506, 1519 (11th Cir.), *cert. denied,* 479 U.S. 823, 107 S.Ct. 93, 93 L.Ed.2d 44 (1986)). Numerous decisions have upheld the convictions of persons, such as lookouts or bodyguards, who have aided or abetted the *retention* of possession. *See, e.g., United States v. Munoz–Fabela,* 896 F.2d 908, 911 (5th Cir.

1990) ("[A] reasonable jury could have concluded that Munoz aided and abetted the crime of possession of cocaine with intent to distribute [by] providing surveillance and security for the principal participants of the drug transaction."); *United States v. Sandini,* 888 F.2d 300, 311 (3d Cir.1989) (bodyguard liable for aiding and abetting possession of cocaine with intent to distribute).

■ Poston next argues that, where a defendant did not assist a principal in obtaining possession of a substance, the defendant may be held liable for aiding and abetting possession only if the defendant himself obtained actual or constructive possession of the substance. App. Br. at 22–23. For this proposition, Poston relies on *United States v. Jackson,* 526 F.2d 1236 (5th Cir.1976). We do not read *Jackson* to impose such requirements. In that case, defendant Jackson merely introduced one distributor already in possession of unlawful narcotics to another distributor. The court reversed Jackson's conviction for aiding and abetting possession of the narcotics, noting that he had neither helped the distributors obtain possession nor obtained possession himself. 526 F.2d at 1238. The *Jackson* court, however, did not hold that these actions constituted the *exclusive* means of aiding and abetting the crime of possession with intent to distribute. Indeed, any such limitation would contradict the expansive language of 18 U.S.C. § 2. This circuit has squarely rejected the suggestion that a defendant must himself obtain actual or constructive possession of an unlawful substance in order to aid or abet another's possession. *See Raper,* 676 F.2d at 850. Indeed, "[t]o say that [a defendant] cannot be convicted [of aiding and abetting possession] without proof of possession is to say that one cannot be an aider and abettor unless one commits the principal offense, which would obliterate the crime of aiding and abetting." *United States v. Wesson,* 889 F.2d 134, 135 (7th Cir.1989).

---

4. There is no requirement of any direct evidence against the defendant; the evidence may be entirely circumstantial. *See, e.g., United States v. Stone,* 748 F.2d 361, 362 (6th Cir.1984); *United States v. Simmons,* 663 F.2d 107, 108 (D.C.Cir.1979).

Finally, Poston argues that merely giving Young a ride, albeit with full knowledge that Young was en route to consummate a drug sale, in no way facilitated Young's possession with intent to distribute. It is well-established that a person's "mere presence" in the vicinity of narcotics possession, in and of itself, does not provide a basis for inferring that he aided or abetted that possession. *See Staten*, 581 F.2d at 884. Poston asserts that by giving Young a ride, he merely put himself in the presence of the PCP, but in no way aided or abetted Young's possession with intent to distribute. Poston depicts his involvement with Young's possession as entirely *passive*, consisting of mere acquiescence in Young's possession.

We are not persuaded, however, that this "mere ride" scenario accurately depicts the facts presented to the jury at Poston's trial. Having carefully reviewed the transcript of the trial, and construing the facts most strongly in favor of the jury's verdict, *see Raper*, 676 F.2d at 849, we conclude that sufficient evidence was introduced to support Poston's conviction. The prosecution argued strenuously and presented an expert witness to suggest that Poston's involvement in the transaction was more extensive than merely providing Young with a casual ride. As we discuss below, the evidence, while hardly overwhelming, was sufficient to allow the jury reasonably to infer that Poston actively facilitated Young's possession by acting as a lookout. Given this evidence, this case does not require us to decide whether a "mere ride" might support a conviction for aiding and abetting the possession of a controlled substance with intent to distribute.

As the prosecution stressed at Poston's trial, appellant's "mere ride" argument suffers from a grave flaw: Poston did not leave the vicinity of the transaction after dropping off Young. Instead, Poston waited in the truck while Young signalled the would-be buyer of the PCP to follow him into the alley where the transaction was to be consummated. As Young and the prospective buyer disappeared into the alley, Poston drove up to the next corner and stopped. From his vantage point on the street, he could not see into the alley, and was thus unaware when the police entered the alley and interrupted the deal. Poston then circled the block and returned to a corner near the alley. He was arrested while sitting in his *stopped* truck at the corner, after Young and the would-be buyer fled. App. at 17, 155, 166, 178, 202.

In addition, the prosecution introduced expert testimony from Richard N. White, Jr., a police investigator who had worked in the Anacostia neighborhood since 1972. Investigator White testified that, based on his extensive experience with PCP transactions, "a person with this type of volume of PCP never travels alone." *Id.* at 322. He further testified that "[l]ookouts are almost always consistent with dealer use," *id.* at 323, and suggested that Poston's conduct, driving a distributor (also called a "juggler," *id.* at 307–08) to a deal and then waiting in a vehicle nearby, comported with that of a lookout.

The question of whether Poston was a lookout was sharply contested at his trial. In cross-examining Investigator White, Poston's counsel attempted to rebut the lookout theory, suggesting that a lookout would have wanted a view of the transaction. *Id.* at 325. Investigator White rejected this suggestion, noting that lookouts are primarily concerned with watching for the police, and "[t]hey may not always be in a position to see the transaction." *Id.* When Poston's counsel suggested that a lookout would not have remained in his car in the street, White noted that a lookout "may want to pull over or at times he may want to maybe camouflage himself. At times, he may stay in the middle of the street." *Id.* at 326. In his closing argument, Poston's counsel reiterated his assertion that Poston "had no view into the alley. So we know that he was not acting as a lookout." *Id.* at 383. The prosecution, on the other hand, highlighted the lookout theory in its closing argument, telling the jury that "you can infer certain things from the evidence. [Poston]'s a lookout for the police. He doesn't see the police. He's wondering what's going on, and he starts driving around a little bit. . . .

He's a lookout for the police and he gets information. He doesn't see Young come back, and he starts driving around." *Id.* at 395.

Based on the evidence set forth above, we conclude that the jury reasonably could have found that Poston was a lookout, and thus his conviction for aiding and abetting Young's possession of PCP with intent to distribute was proper. A lookout affirmatively helps a principal retain unlawful possession by seeking to prevent or deter others from interfering with that possession. Lookouts have long been recognized to be liable under 18 U.S.C. § 2 for aiding and abetting possession offenses. *See, e.g., United States v. Schwartz,* 666 F.2d 461, 464 (11th Cir.1982); *United States v. Soto,* 591 F.2d 1091, 1103–04 (5th Cir.), *cert. denied,* 442 U.S. 930, 99 S.Ct. 2862, 61 L.Ed.2d 298 (1979); *United States v. Pui Kan Lam,* 483 F.2d 1202, 1208 (2d Cir. 1973), *cert. denied,* 415 U.S. 984, 94 S.Ct. 1577, 39 L.Ed.2d 881 (1974).

## II.

Poston's second contention is that the district judge abused his discretion by denying Poston's motion for a continuance of the proceedings, which was filed the afternoon before trial was scheduled to begin. Poston initially sought the delay to allow his newly retained counsel, Stephen M. Buckman, to prepare more fully for trial. At a hearing on the motion, Poston advanced the additional argument that his trial should be postponed until after that of his codefendant, Anthony Young, who, if convicted, might then be compelled to testify and might possibly provide exculpatory testimony. The trial judge indicated that he would grant the continuance only if Poston agreed to pay all the expenses already incurred for the trial, including the fee of his former court-appointed attorney and the expenses of the jury. Poston refused these terms, and the trial proceeded.

█ A trial judge enjoys great discretion in ruling on a motion for a continuance. *See, e.g., Morris v. Slappy,* 461 U.S. 1, 11, 103 S.Ct. 1610, 1616, 75 L.Ed.2d 610 (1983); *United States v. Haldeman,* 559 F.2d 31, 83–84 (D.C.Cir.1976) (en banc) (per curiam), *cert. denied,* 431 U.S. 933, 97 S.Ct. 2641, 53 L.Ed.2d 250 (1977). Nevertheless, this discretion is not boundless. The judge must consider the justifications offered by the party seeking a continuance, balancing them against the judicial system's interest in expeditious proceedings. Given the trial judge's broad discretion to grant or deny a continuance, an appellate court's role is limited to determining whether the judge "clearly abused" his discretion. *United States v. West,* 607 F.2d 300, 305 (9th Cir. 1979).

█ Poston's first argument is that the denial of his motion was unreasonable because it deprived him of the effective assistance of counsel. Poston correctly notes that the denial of a continuance to allow new counsel to prepare implicates the sixth amendment right to counsel.[5] That amendment, however, does not give a criminal defendant an *absolute* right to a continuance to allow counsel to prepare. *See Morris,* 461 U.S. at 11, 103 S.Ct. at 1616; *United States v. Burton,* 584 F.2d 485, 488–90 (D.C.Cir.1978), *cert. denied,* 439 U.S. 1069, 99 S.Ct. 837, 59 L.Ed.2d 34 (1979). As this court has noted, the right to counsel " 'cannot be insisted upon in a manner that will obstruct an orderly procedure in courts of justice, and deprive such courts of the exercise of their inherent powers to control the same.' The public has a strong interest in the prompt, effective, and efficient administration of justice; the public's interest in the dispensation of justice that is not unreasonably delayed has great force." *Burton,* 584 F.2d at 489 (quoting *Lee v. United States,* 235 F.2d 219, 221 (D.C.Cir.1956) (footnotes omitted)).

*Burton* sets forth a number of factors that a trial court may consider in ruling on a motion for a continuance based upon an

5. The sixth amendment, in pertinent part, provides: "In all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence." U.S. Const. amend. VI.

asserted need for time for counsel to prepare more fully. These include

> the length of the requested delay; whether other continuances have been requested and granted; the balanced convenience or inconvenience to the litigants, witnesses, counsel, and the court; whether the requested delay is for legitimate reasons, or whether it is dilatory, purposeful, or contrived; whether the defendant contributed to the circumstance which gives rise to the request for a continuance; whether the defendant has other competent counsel prepared to try the case, including the consideration of whether the other counsel was retained as lead or associate counsel; whether denying the continuance will result in identifiable prejudice to defendant's case, and if so, whether this prejudice is of a material or substantial nature; the complexity of the case; and other relevant factors which may apply in the context of any particular case.

584 F.2d at 490–91 (footnotes omitted). In weighing these factors, we presume that the trial judge's decision was reasonable, and find a violation of the right to the effective assistance of counsel only if the denial of a continuance was "unreasoning and arbitrary." *Morris*, 461 U.S. at 11, 103 S.Ct. at 1616.

■ Applying the *Burton* factors to this case, we are unpersuaded by Poston's sixth amendment challenge to the denial of the continuance. The court appointed an attorney to represent Poston on May 16, 1988, six days after Poston's arrest. Over the ensuing months, this attorney represented Poston at his arraignment, at a hearing to suppress the post-arrest statement, and on a successful motion to sever his trial from that of Anthony Young. Poston, however, did not seek to replace his attorney until September 14, 1988, the day before his trial was to begin. At that point, granting a continuance would have significantly disrupted the schedules of the court and the

prosecution. Since Poston provided no justification for the delay in selecting new counsel, the trial court could reasonably have concluded that his motion was "dilatory, purposeful, or contrived." *Burton*, 584 F.2d at 491 (footnote omitted). Poston's new attorney, furthermore, stated unequivocally at the pretrial hearing that he was prepared to try the case.[6] Finally, the trial judge required Poston's court-appointed attorney to remain in the case to assist his new attorney, App. at 29, 48, 55, and both actively participated in cross-examining the government's witnesses. Accordingly, we hold that the trial judge's refusal to grant a continuance based on the asserted need of new counsel to prepare for trial was not an abuse of discretion.

■ Poston next claims that the judge abused his discretion in denying the continuance because, if Young were tried first and convicted, Young might thereafter be compelled to provide testimony that might exculpate Poston. In considering a continuance motion based upon an asserted need for a codefendant's testimony, the trial judge must balance the countervailing interests on both sides. On appeal, this court must affirm a district court's decision to grant or deny the motion absent a clear abuse of discretion. In this case, we find no such abuse.

■ As noted above, Poston's motion was filed at the eleventh hour. In fact, the need for Young's testimony was not asserted until the hearing held on the very morning on which the trial was scheduled to begin. Poston asserted that Young would be willing to provide exculpatory testimony on Poston's behalf after Young's own trial. Young's willingness and ability to provide such testimony, however, are far from clear. The trial judge entertained the notion of questioning Young to determine whether he would testify, but Young's counsel pointed out that Young would invoke the fifth amendment. App. at 44–45, 50.[7]

---

**6.** During the hearing on the motion for a continuance, new counsel Buckman declared, "Your Honor, I am prepared for this case, and I am able counsel and I am prepared to try this

case.... I have tried over 50 cases." App. at 29, 30.

**7.** When Poston's counsel later questioned Young outside the jury's presence, Young in fact de-

Mere assertions regarding the utility of prospective testimony do not provide a sufficient basis to compel a continuance. While Young, after his conviction, might well have been compelled to testify on Poston's behalf,[8] there is no indication that Young's testimony would have been material and favorable to Poston. On the contrary, Poston himself had requested the severance of his trial from Young's, on the ground that Young's confession, which interlocked with his own, might *inculpate* him. It is ironic, therefore, for Poston subsequently to demand a continuance on the ground that Young's testimony might *exculpate* him. Indeed, "among severed co-defendants, there is no absolute right to be tried in a certain order; each case must be evaluated on its own facts." *United States v. DiBernardo*, 880 F.2d 1216, 1229 (11th Cir.1989); *cf. Byrd v. Wainwright*, 428 F.2d 1017, 1022 (5th Cir.1970) ("The sequence in which trials would be held is in the discretion of the court.") (footnote omitted). On the facts of this case, Poston has failed to demonstrate how the trial judge's decision to deny the continuance constituted a clear abuse of discretion. Accordingly, we must reject this claim.

### III.

Poston's third contention is that he received ineffective assistance of counsel, in violation of his sixth amendment rights, because his new attorney, Buckman, had been on the case only one day when the trial began. Assessing this claim under the two-part analysis set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), we find it without merit.

Under *Strickland*, a defendant claiming ineffective assistance of counsel must show (1) that "counsel made *errors* so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," and (2) "that the deficient performance *prejudiced* the defense" to such a degree that the trial must be presumed unreliable. 466 U.S. at 687, 104 S.Ct. at 2064 (emphasis added). Poston has failed to satisfy either requirement. He has not specified any act or omission by Buckman that could be labeled a deficiency; instead, he relies upon a generalized and conclusory assertion that Buckman's lack of time to prepare the case inherently rendered his representation deficient. Poston's claim contravenes the Supreme Court's admonitions that "[j]udicial scrutiny of counsel's performance must be highly deferential," and that courts must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689, 104 S.Ct. at 2065.

Even if Buckman erred, Poston must demonstrate that Buckman's deficient performance prejudiced him in some way. Here, he has failed altogether to show any prejudice, much less a "reasonable probability" that the result of the trial would have been different but for the allegedly ineffective assistance. *Id.* at 695, 104 S.Ct. at 2068–69. Although, under certain compelling circumstances such as a conflict of interest between attorney and client, prejudice may be presumed, *id.* at 692, 104 S.Ct. at 2067, limited preparation time per se does not constitute such a circumstance. Buckman was an experienced criminal defense attorney, and this case is neither factually nor legally complex. In addition, as noted above, Poston's court-appointed attorney served as co-counsel and actively participated in the trial. Finally, since Poston himself retained the new attorney on the eve of trial, he must bear some respon-

---

clined to make any statements, citing his fifth amendment privilege against self-incrimination. App. at 221–30.

**8.** There is considerable authority for the proposition that, regardless of any grant of immunity, a witness convicted for a given transaction loses the fifth amendment privilege and may be compelled to testify with respect to that transaction. *See United States v. Heldt*, 668 F.2d 1238, 1253 (D.C.Cir.1981), *cert. denied*, 456 U.S. 926, 102 S.Ct. 1971, 72 L.Ed.2d 440 (1982); *United States v. Pardo*, 636 F.2d 535, 543 (D.C.Cir.1980); *In re Liddy*, 506 F.2d 1293, 1299–1300 (D.C.Cir.1974); *United States v. Romero*, 249 F.2d 371, 375 (2d Cir.1957); *cf. Reina v. United States*, 364 U.S. 507, 513, 81 S.Ct. 260, 264, 5 L.Ed.2d 249 (1960) (noting that there is "weighty authority" for this proposition).

sibility for that attorney's lack of time to prepare more thoroughly.[9]

## IV.

■ Finally, Poston argues that the prosecution's refusal to request that his sentence be reduced below the minimum mandated by the federal sentencing guidelines contravened a promise made by a police officer after Poston's arrest and, as a result, denied him due process of law. In essence, Poston contends that the officer promised him leniency in return for his cooperation, that the promise induced him to make an incriminating statement, and that the government ultimately reneged on its promise. As construed by Poston, the officer's promise required the prosecution to exercise its discretion to file a motion, pursuant to 18 U.S.C. § 3553(e),[10] for departure from the mandatory minimum sentence of sixty months. Because we find that, to the extent the police made any binding promise to Poston, they promised merely to mention Poston's cooperation to the prosecution, we reject this claim.

Following his arrest, Poston was taken to the local police station. He was advised of his *Miranda* rights on several occasions, and waived his right not to be questioned about the incident without the presence of an attorney. App. at 167, 171, 181, 255–56, 274–75. Poston's father arrived at the station shortly after the arrest. According to the father, the police stated that Poston faced ten years in prison, but that if Poston cooperated, "it'll be easy on him." Tr. Supp. Hrg. at 91. The father testified that he then asked, "Are you snowing me about this?," and that an officer responded, "We will put in a word for him that he really cooperated and that he was no problem." *Id.* The father allegedly then advised Poston to cooperate, and Poston subsequently made an incriminating statement describing the drug transaction. App. at 269–70. Poston's father, however, conceded that the police had promised only to "tell the prosecutor that your son cooperated," and that they never purported to guarantee what the prosecutor would do. Tr. Supp. Hrg. at 95.

At trial, two of the police officers who participated in Poston's arrest testified that they never made any promises to him. App. at 164, 183. A third officer testified that he made no promises to Poston, but that, as was his practice, told him "that anything that he said would be relayed to the U.S. Attorney, and any determination about the crime, about the prosecution, would be determined by someone other than myself." *Id.* at 271. The officer also testified that he fulfilled this commitment. *Id.*

Poston does not contend that the police failed to communicate his cooperation to the U.S. Attorney; rather, he argues that

---

**9.** Because Poston has not raised any substantial issue that requires a determination of facts, we decline to remand this case to the district court for an evidentiary hearing. Although this court has, in appropriate cases, remanded claims of ineffective assistance of counsel that were raised for the first time on appeal, those claims alleged specific deficiencies and presented substantial factual issues that might establish a violation of the right to counsel. *See, e.g., United States v. Cyrus,* 890 F.2d 1245, 1247 (D.C.Cir. 1989); *United States v. DeCoster,* 487 F.2d 1197, 1204–05 (D.C.Cir.1973). This court has never held that *any* claim of ineffective assistance of counsel, no matter how conclusory or meritless, automatically entitles a party to an evidentiary remand. *Cf. United States v. Wood,* 879 F.2d 927, 933–34 (D.C.Cir.1989) (refusing to remand an ineffective assistance of counsel claim where appellant "cannot show that she was prejudiced by any possible ineffectiveness on the part of her trial counsel"); *United States v. McCord,* 509 F.2d 334, 352 n. 65 (D.C.Cir.1974) (en banc) ("We will not order a hearing on claims of ineffective assistance of counsel when the record on appeal conclusively shows that the appellant is entitled to no relief.") (citation omitted), *cert. denied,* 421 U.S. 930, 95 S.Ct. 1656, 44 L.Ed.2d 87 (1975). Poston has failed to raise any factual allegations that, if true, would establish a violation of his sixth amendment right to counsel; his ineffective assistance of counsel claim, thus, fails as a matter of law and a remand would be superfluous.

**10.** This section provides, in pertinent part, that "[u]pon motion of the Government, the court shall have the authority to impose a sentence below a level established by statute as minimum sentence so as to reflect a defendant's substantial assistance in the investigation or prosecution of another person who has committed an offense." 18 U.S.C. § 3553(e).

one police officer's promise to mention his cooperation obligated the prosecution to file a motion to depart from the sentencing guidelines. A general promise to reward cooperation by "putting in a good word," however, is a far cry from a specific promise to file a motion to depart from the sentencing guidelines.[11] A promise like the one Poston describes, moreover, cannot give rise to any justifiable reliance or expectation that the prosecution will eventually file a motion to depart from the sentencing guidelines. Because here we find no promise relating to sentencing, Poston's argument fails.

\*     \*     \*     \*     \*     \*

For the foregoing reasons, the conviction is

*Affirmed.*

---

11. Only the government can file a motion to depart from the sentencing guidelines, and then only "to reflect a defendant's substantial assistance in the investigation or prosecution of another person who has committed an offense." 18 U.S.C. § 3553(e). The U.S. Attorney's office decided that Poston's "cooperation" was not "substantial assistance." Poston does not contend that the U.S. Attorney's office made this determination in bad faith.