[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
March 9, 2007
THOMAS K. KAHN
CLERK

No. 05-11121

D.C. Docket No. 02-00319-CR-T-26-TGW

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

PAULETTE LYNNE MCCARTER,
a.k.a. Paulette Lynne LaBrake,
STEVEN ALLEN LABRAKE,
CHESTER MAURICE LUNEY,
a.k.a. Chet Luney

Defendants-Appellants.

Appeals from the United States District Court
for the Middle District of Florida

**(March 9, 2007)**

Before ANDERSON and BARKETT, Circuit Judges, and STROM,* District
Judge.

---

* Honorable Lyle E. Strom, United States District Judge for the District of Nebraska,
sitting by designation.

STROM, District Judge:

Defendants appeal their convictions for charges relating to a scheme to defraud the United States, bribery and receipt of gratuities. Defendants assert the district court erred: (1) in declining to dismiss the indictment against them for failure to provide an adequate description of the scheme to defraud; (2) in denying the defendants' motions for judgment of acquittal based on insufficiency of evidence; (3) in declining to sever Counts 59 and 60 of the sixty-count indictment; and (4) in enhancing defendant Steven LaBrake's offense level based on the court's findings at sentencing.

## I.    BACKGROUND

### A.    Defendants

Defendant Steven LaBrake ("LaBrake") headed the Community Redevelopment Agency ("CRA") of Tampa, Florida ("the City"). The CRA receives money from the United States Department of Housing and Urban Development ("HUD") and administers funding for the City's housing program. The City partners with and guarantees lines of credit for various not-for-profit entities to rehabilitate existing houses and construct new moderate and low-income housing. The not-for-profit entities hire contractors chosen by the City to perform the construction work.

Paulette Lynne McCarter ("McCarter"),[1] LaBrake's then-girlfriend and now wife, also worked for the CRA, eventually taking the position of senior redevelopment counselor, the equivalent of a loan processor. She helped first-time homeowners obtain loans under the City's housing program .

Chester Luney ("Luney"), a friend of LaBrake, was the chief executive officer of Tampa Hillsborough Action Plan ("THAP"), a group of not-for-profit entities that both built houses and coordinated the construction of houses by private contractors. THAP received contracts from the City for low-income housing projects. During the period that LaBrake headed the CRA, THAP began to receive a greater number of projects from the City. At the same time, Luney also worked as a full-time staff psychologist for the United States Department for Veterans Affairs ("VA"). His supervisor at the VA testified that Luney repeatedly denied having a relationship with THAP during his employment with the VA.

Dean Ryan ("Ryan") was a contractor who worked for not-for-profit entities, such as THAP, and received many contracts from the City. Ryan also performed various work at McCarter's property, including carpet and fence installation. Ryan pled guilty before the trial and testified as a government

---

[1] Paulette Lynne McCarter changed her last name to LaBrake after she married co-defendant Steven LaBrake. To avoid confusion, the Court will refer to her as "McCarter" throughout this opinion.

witness at trial. He testified that "[Mr. LaBrake] was the boss and you did what he said or you just didn't do anything" (Doc. 344 at 180).

Lori Roberts, also known as Lori Horne, was a loan officer at the University of South Florida Federal Credit Union. The jury found Roberts not guilty of both charges against her.

## B.    Factual Background

In January 1999, LaBrake bought property to build a house on Chippewa Avenue in Tampa, Florida ("Chippewa property"). In February 2000, Luney hired Albert Carswell to install pavers at LaBrake's Chippewa property and directed THAP to pay $1,275 for the installation. Carswell prepared an invoice for the work at LaBrake's property, but the invoice was altered to describe the work as "concrete work @ Enterprise Center." Luney's subordinate, Lynn Knox, testified that Luney told her he had gotten "too close to the line" in reference to this incident.

In November 2000, McCarter and LaBrake, who were dating at the time, decided to build a house together on Corona Street in Tampa, Florida ("Corona property"). The contract and loan application were solely in McCarter's name. On November 1, 2000, in an effort to help McCarter improve her financial situation and eliminate debt, Luney directed THAP to buy out McCarter's lease of a Toyota 4Runner and then on November 9, 2000, separately paid McCarter's

4

company, "So What's the Occasion?," $576.34 for the tires on the Toyota 4Runner. In the fall of 2000, Luney's organization, THAP, contracted with McCarter's company to purchase 250 gift baskets at $125 each to give to new homeowners. The evidence established that nearly all of the goods in these gift baskets were provided by THAP and other not-for-profit organizations, and not McCarter's company. For these baskets, THAP paid McCarter's company a total of $32,475 between November 2000 and July 2001. Out of these funds, McCarter wrote checks to LaBrake totalling over $5,000. On January 3, 2001, Luney executed a lease agreement with McCarter for her house in Riverview, Florida, which enabled McCarter to list rental income on her loan application for the Corona property. Under the lease agreement, Luney's daughter was to live in the Riverview house for $1,400 per month. However, Luney's daughter never moved into the Riverview house, and the house was not leased to another person until October 2001. The tenant executed a lease for $1,050 per month.

At the time McCarter purchased the Corona property, there was an old, small house on the property. LaBrake, through THAP, paid more than $29,000 to move the house from the Corona property when THAP did not yet have a lot on which to place the house. THAP also paid to remove debris from the property, paid to repair a neighbor's fence that had been damaged during the move, and purchased palm trees for the property.

In December 2000, McCarter hired Ryan to build the shell of the house for $105,000, and Ryan personally incurred many expenses during the construction. Early in 2001, when Ryan could no longer afford to work on the house, LaBrake promised to award fifteen contracts to Ryan at $3,000 more than the standard contract. Beginning in February 2001, THAP awarded Ryan fourteen contracts at the higher price, which were approved by Luney. Ryan requested a similar higher price from Tampa United Methodist Centers ("TUMC"), another not-for-profit entity involved in low-income housing. The director of TUMC contacted LaBrake's office to inquire about Ryan's request. McCarter spoke with him and told him she would speak to LaBrake about Ryan's contracts. LaBrake then notified TUMC that he wanted Ryan to get fourteen or fifteen more contracts at the higher price. In addition, THAP issued a $30,000 check to Ryan in March 2001. Ryan testified that he performed no work for THAP in exchange for this check. Soon after, LaBrake requested Ryan to pay two of McCarter's credit card bills. According to the evidence, Ryan paid $13,379 on one of the bills for charges unrelated to the Corona property. In 2003, McCarter and LaBrake sold the Corona property for $480,000.

CRA employee, David Snyder, testified that at a meeting to discuss the best use of CRA funds, LaBrake stated that they needed to take care of their friends first, mentioning Luney and Ryan. It was standard policy for not-for-profit entities

6

to receive a ten percent development fee for each property on which they built and sold a house. In March 2001, THAP received $5,000 per property in addition to the development fee. Invoices including this additional fee were to be sent to the CRA.

In March 2001, LaBrake asked Luney to complete construction on a house on Josie Drive in Seffner, Florida, owned by Lori Roberts, a friend of McCarter and LaBrake. Roberts had a balance of $58,000 on her homeowner's loan; however, THAP estimated the cost of the work to be completed was $108,000. Luney told THAP employee, Lynn Knox, that THAP would recover the $50,000 through additional awards of projects from the City through LaBrake. THAP paid a contractor between $80,000 and $90,000 to complete construction on the property.

### C. The Charges

LaBrake, McCarter, and Luney (collectively "defendants") were charged with sixty criminal violations in total. The superseding indictment ("indictment") charged each defendant with conspiracy to defraud and commit offenses against the United States, in violation of 18 U.S.C. § 371 (Count 1) and wire fraud, in violation of 18 U.S.C.§§ 1343, 1346 and 2 (Count 2).

The indictment charged Luney with bribery, in violation of 18 U.S.C. §§ 201(b)(1)(A) and (B) and 2 (Counts 6-13); providing unlawful gratuities, in

violation of 18 U.S.C. §§ 201(c)(1)(A) and 2 (Counts 28-35); bribery, in violation of 18 U.S.C. §§ 666(a)(2) and 2 (Counts 56-58); and embezzlement, in violation of 18 U.S.C. §§ 666(a)(1)(A)(i) and (ii) and 29 (Count 59) and in violation of 18 U.S.C. §§ 641 and 2 (Count 60).

The indictment charged LaBrake and McCarter with bribery in violation of 18 U.S.C. §§ 201(b)(2)(A) and (B) and 2 (Counts 14-24); receiving unlawful gratuities, in violation of 18 U.S.C. §§ 201(c)(1)(B) and 2 (Counts 36-46); and bribery, in violation of 18 U.S.C. §§ 666(a)(1)(B) and 2 (Counts 47-52).

### D.     Trial Proceedings

Ryan pled guilty prior to the trial, and the remaining defendants were tried before a jury in November 2004.  Luney moved pre-trial to sever Counts 59 and 60 and orally renewed this motion on the first day of trial.  The district court denied these motions.  Following the government's case-in-chief, the district court granted Luney's motion for judgment of acquittal with respect to Counts 59 and 60, but denied Luney's motion for mistrial.  Luney did not testify and presented only one witness, his wife, during his case-in-chief.  At the close of all the evidence, the district court denied Luney's motion for judgment of acquittal on the remaining counts.

LaBrake testified in his defense at trial.  The court denied LaBrake's motion for judgment of acquittal on all counts against him.  McCarter did not call any

8

witnesses on her behalf. At the close of all the evidence, the district court granted McCarter's motion for judgment of acquittal as to Counts 14 and 36, finding she was not a public official. However, the court did not grant McCarter's motion for judgment of acquittal on the other counts and, instead, allowed the jury to consider whether McCarter was guilty of aiding and abetting LaBrake, a public official, in the solicitation and receipt of bribes and gratuities.

The jury found: (1) LaBrake and McCarter guilty of all charges against them; and (2) Luney guilty of Counts 1,2,6-13,28-35, 57 and 58, but not guilty of Count 56. The district court denied the defendants' post-verdict motions for new trials and for judgments of acquittal. The court sentenced LaBrake to 60 months imprisonment, McCarter to 41 months imprisonment, and Luney to 33 months imprisonment.

## II.     ISSUES ON APPEAL

A.    Whether the district court erred in declining to dismiss the indictment for failure to provide an adequate description of the scheme to defraud;

B.    Whether the district court erred in denying the defendants' motions for judgment of acquittal based on insufficiency of evidence;

C.    Whether the district court erred in declining to sever Counts 59 and 60; and

D.    Whether the district erred in enhancing LaBrake's offense level based on the court's findings at sentencing.

## III.   DISCUSSION

### A.   Adequacy of the Indictment

Luney argues, and LaBrake and McCarter adopt his argument, that the district court erred in declining to dismiss the indictment for failure to provide an adequate description of the scheme to defraud.[2]  The sufficiency of an indictment is a legal question reviewed *de novo.  United States v. Bobo,* 344 F.3d 1076 (11th Cir. 2003).

"The elements of wire fraud under 18 U.S.C. § 1343 are (1) intentional participation in a scheme to defraud and (2) use of the interstate wires in furtherance of the scheme."  *United States v. Hasson*, 333 F.3d 1264, 1270 (11th Cir. 2003), *cert. denied*, 541 U.S. 1056 (2004), 543 U.S. 1173 (2005) (citing *United States v. Ross*, 131 F.3d 970, 984 (11th Cir. 1997).  In addition,  the government must allege of what the victim has been defrauded, whether it be money, property or the right to honest services under 18 U.S.C. § 1346.[3]  *United States v. deVegter*, 198 F.3d 1324, 1328 n.4 (11th Cir. 1999).  "An indictment need do little more than track the language of the statute charged to be sufficient."

---

[2] Luney's argument relates only to Count 2 of the indictment. Defendants challenge the description of the scheme to defraud, which is the first of two elements of wire fraud.

[3] Section 1346 states: "For the purposes of this chapter, the term 'scheme or artifice to defraud' includes a scheme or artifice to deprive another of the intangible right of honest services."  18 U.S.C. § 1346.

10

*United States v. Adkinson,* 135 F.3d 1363, 1375 n.37 (11th Cir. 1998) (citing

*United States v. Stavroulakis*, 952 F.2d 686, 693 (2nd Cir. 1992).

Here, the indictment includes sufficient information and an adequate description of the scheme to defraud.   Count 2 of the indictment charges defendants with knowingly and willfully causing HUD to transfer by wire $100,687.41 "for the purpose of executing [defendants'] scheme to defraud, and for obtaining money by means of false and fraudulent pretenses, representations, and promises, and for depriving the citizens of the State of Florida and the City of Tampa of the intangible right of honest services" in violation of 18 U.S.C. §§ 1343, 1346 and 2.  The indictment provided further allegations of the scheme to defraud, alleging that LaBrake and McCarter requested and received items of value from Luney and Ryan, and that Luney and Ryan gave items of value to LaBrake and McCarter in exchange for contracts.  Reviewing the adequacy of the indictment *de novo*, we find the district court did not err in declining to dismiss the indictment.

Related to the issue of the indictment's adequacy is LaBrake's argument that the indictment was so vague as to allow constructive amendment of the indictment by the district court's jury instructions and the government's evidence and closing arguments.  LaBrake relies on a general allegation that the government's case was based on an insufficient legal theory; however, LaBrake

11

fails to point to any specific portions of the indictment that were allegedly constructively amended or the manner in which they were amended; therefore, there is no basis for the Court to reverse LaBrake's convictions on this ground. *See Greenbriar, Ltd. v. City of Alabaster*, 881 F.2d 1570, 1573 n.6 (11th Cir. 1989) (citing *Davis v. Hill Engineering, Inc.*, 549 F.2d 314, 324 (5th Cir. 1977)).

## B.     Sufficiency of the Evidence

The defendants argue that the district court erred in denying their motions for judgment of acquittal because their convictions were not supported by sufficient evidence. We review both a denial of a motion for judgment of acquittal and the sufficiency of the evidence supporting a conviction *de novo*, viewing the evidence in the light most favorable to the government. *United States v. Evans*, 344 F.3d 1131 (11th Cir. 2003); *United States v. Eckhardt*, 466 F.3d 938 (11th Cir. 2006) (quoting *United States v. Diaz-Boyzo*, 432 F.3d 1264, 1269 (11th Cir.2005)); *United States v. Hasson*, 333 F.3d 1264, 1270 (11th Cir. 2003), *cert. denied*, 541 U.S. 1056 (2004), 543 U.S. 1173 (2005). To support a conviction "[i]t is not necessary that the evidence exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt. A jury is free to choose among reasonable constructions of the evidence." *United States v. Ospina*, 823 F.2d 429, 433 (11th Cir. 1987) (citing *United States v. Bell*, 678 F.2d 547, 549 (5th Cir. 1982), *aff'd on other grounds*, 462 U.S. 356 (1983)).

12

We will affirm the verdict if a reasonable juror could conclude the evidence establishes the defendants' guilt beyond a reasonable doubt. *Hasson*, 333 F.3d at 1270.

### 1. Luney and LaBrake[4]

Luney claims, and LaBrake adopts his argument, that the district court erred in denying his motion for judgment of acquittal with respect to Counts 1, 2, 6-11, 13, 28-33, 34, 57 and 58. Specifically, Luney argues there was insufficient evidence of: (1) his corrupt intent to effect a *quid pro quo*; (2) a link between the things of value he received and the services he provided or actions he took; (3) the ability of McCarter to influence a public official in exchange for things of value from Luney; (4) his participation, and intention to participate, in a scheme to defraud; and (5) his knowing entry into an agreement to conspire to commit unlawful acts.

To prove a defendant is guilty of bribery, the government must prove there was "*a quid pro quo* -- a specific intent to give or receive something of value in exchange for an official act." *United States v. Sun-Diamond Growers of California*, 526 U.S. 398, 404-05 (1999). The government need not present

---

[4] LaBrake makes no arguments of his own regarding sufficiency of the evidence against him and instead relies on his adoption of Luney's arguments. "[S]ufficiency arguments are too individualized to be generally adopted." *United States v. Cooper*, 203 F.3d 1279, 1285 n.4 (11th Cir. 2000) (citing *United States v. Davis*, 61 F.3d 291, 296 n.2 (5th Cir.1995)). Regardless, the Court finds there was sufficient evidence supporting LaBrake's conviction.

evidence of a direct agreement to exchange official action for money; instead, bribery may be proven through inferences drawn from the circumstantial evidence. *United States v. Massey*, 89 F.3d 1433, 1439 (11th Cir. 1996), *cert denied,* 519 U.S. 1127 (1997). In *United States v. Quinn*, 359 F.3d 666 (4th Cir. 2004), the Fourth Circuit Court of Appeals stated that the government need not prove "'that the defendant intended for his payments to be tied to specific official acts (or omissions) . . . . Rather, it is sufficient to show that the payor intended for each payment to induce the official to adopt a specific course of action.'" *Quinn*, 359 F.3d at 673 (quoting *United States v. Jennings*, 160 F.3d 1006, 1014 (4th Cir. 1998)).

To support a gratuities conviction, "the Government must prove a link between a thing of value conferred upon a public official and a specific "official act" for or because of which it was given." *Sun-Diamond Growers,* 526 U.S. at 414. An illegal gratuity can be a reward for a past or future act taken by a public official. *Id.* at 405.

To prove the existence of a conspiracy to defraud or commit offenses against the United States, the government must establish: (1) an agreement between two or more person to achieve an unlawful objective; (2) a defendant's knowledge of and voluntary participation in the conspiracy; and (3) the commission of an over act in furtherance of the conspiracy. *United States v. Suba*,

14

132 F.3d 662, 672 (11th Cir. 1998). "A scheme to defraud requires proof of material misrepresentations, or the omission or concealment of material facts, reasonably calculated to deceive persons of ordinary prudence." Id. at 1270-1271 (internal quotation marks omitted). *Hasson*, 333 F.3d at 1270.

We find the evidence is sufficient to support a finding by a reasonable juror that Luney and LaBrake were guilty beyond a reasonable doubt of the counts charged. The evidence supports the conclusion that LaBrake sought and Luney provided things of value to LaBrake, in exchange for the award of contracts to THAP. The evidence concerning two incidents in particular is convincing that there was sufficient evidence to support Luney's and LaBrake's convictions. First, there is evidence that Luney directed THAP to pay for the installation of pavers at LaBrake's Chippewa property in February 2000, with the intention that LaBrake would channel City contracts to THAP. According to the evidence, the installer prepared an invoice accurately describing the work, but the invoice was altered to make it appear as though the work had been done elsewhere. The altered invoice described the work as "concrete work @ Enterprise Center." In addition, there was testimony that Luney told a subordinate employee that he had gotten "too close to the line," in reference to the work performed on LaBrake's property at THAP's expense.

Second, there was evidence that Luney and LaBrake concocted a gift basket scheme to funnel THAP money to LaBrake in exchange for the award of contracts. As part of this plan, THAP entered into a contract with a company McCarter registered in 2000 called "So What's the Occasion?" ("McCarter's company"), wherein THAP agreed to purchase 250 gift baskets from McCarter's company at $125 dollars each. The evidence established that THAP paid McCarter's company a total of $32,475 for the gift baskets, even though THAP and other not-for-profit companies, not McCarter's company, paid for nearly all of the items in the gift baskets. In addition, there is evidence that McCarter then wrote checks to LaBrake from McCarter's company's account totaling approximately $5,000. Lynn Knox testified that the number of contracts THAP received from the City increased during the time period in which LaBrake was the head of the CRA, and THAP began to receive more contracts than TUMC, which had formerly received more contracts than THAP. In addition, both Luney and LaBrake made statements to their respective employees tending to prove their guilt. At a meeting to discuss allocation of CRA funds, LaBrake stated that the CRA had to take care of its friends first, specifically mentioning Luney and Ryan. Similarly, LaBrake made statements to Lynn Knox that his actions may have been "too close to the line" and reassured employees that LaBrake would award THAP additional contracts to

16

make up for a $50,000 shortfall related to THAP's work at Roberts' Josie property.

Finally, Luney argues that (1) McCarter was not a public official and lacked authority to award contracts and (2) the government failed to prove that Luney gave things of value to McCarter with the intention that McCarter would persuade LaBrake to award contracts to THAP. We disagree. The evidence presented at trial demonstrates that Luney knew McCarter was LaBrake's girlfriend when he provided goods and services to McCarter and that LaBrake was in charge of determining how many contracts THAP should receive from the City. Also, many of the benefits bestowed upon McCarter by Luney directly and indirectly benefitted LaBrake. For instance, Luney was aware that McCarter and LaBrake intended to live together at the Corona property, where THAP provided many services. McCarter wrote out checks to LaBrake from McCarter's company's account after McCarter's company received money from THAP. Viewing the evidence in the light most favorable to the government, we find there was sufficient evidence for the jury to find LaBrake and Luney guilty beyond a reasonable doubt.

### 2. McCarter

McCarter argues that the evidence was insufficient to prove she : (1) entered into any agreement with the co-defendants to commit any of the substantive crimes

charged in the indictment; and (2) had the requisite intent to commit any of the substantive crimes charged in the indictment. At the close of the evidence, the district court found that McCarter was not a public official and lacked the authority and ability to award contracts; however, the district court instructed the jury to consider whether McCarter aided and abetted LaBrake in the solicitation and receipt of bribes.

To prove a defendant is guilty of aiding and abetting the commission of a crime in violation of 18 U.S.C. § 2,[5] the government must prove the defendant assisted the perpetrator of the crime and shared the requisite criminal intent. *United States v. Schwartz*, 666 F.2d 461, 463 (11th Cir. 1982). The government must prove "the defendant associated [herself] with a criminal venture, participated in it as something [she] wished to bring about and sought by [her] actions to make it succeed." *Id.* (quoting *United States v. Smith*, 631 F.2d 391, 395 (5th Cir. 1980)). Even when the government provides little direct evidence of a defendant's knowledge concerning a bribery scheme, the jury's conviction will

---

[5] 18 U.S.C. § 2 states:

(a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.

(b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

not be overturned if there is adequate circumstantial evidence from which the jury could infer the defendant's knowledge of the scheme. *United States v. Griffin* 324 F.3d 330, 357-58 (5th Cir. 2003). Moreover, "proof of a close association between the defendant and a key player in the conspiracy can be probative of the defendant's guilty knowledge." *Id.* at 358.

McCarter's receipt of services and things of value from LaBrake and Ryan both directly and through McCarter's company establish at least a minimal level of participation in Luney's and LaBrake's illegal activities. McCarter received *inter alia* $32,475 for gift baskets in exchange for virtually no investment and also received various services to the Corona property at no expense. Additionally, THAP paid McCarter's company separately for her Toyota 4Runner tires, even though THAP had already bought out her lease on the entire vehicle.

While the receipt of services and things of value does not necessarily establish McCarter's knowledge of illegal activities or requisite intent to violate the law, we find there was sufficient evidence of her knowledge and intent to support her conviction. McCarter chose not to testify at trial; therefore, any evidence of her knowledge and intent is necessarily circumstantial. *See United States v. Smith*, 459 F.3d 1276, 1287 (11th Cir. 2006). According to the evidence, McCarter was aware that THAP awarded Ryan fifteen contracts at $3,000 higher than the standard rate at a time when Ryan was performing work on her property

and after Ryan informed LaBrake and McCarter that he could no longer afford to work on their property without getting paid. She had worked for the CRA and had some knowledge of LaBrake's role in the process of awarding contracts. McCarter was also aware that THAP paid to remove the house on her Corona property, so that she and LaBrake could build a new house on the property. After McCarter received money for the gift baskets, she wrote checks to LaBrake totaling $5,000 from the funds she received. Moreover, McCarter was aware of the relationship between LaBrake, Luney, and Ryan. Viewing the evidence in the light most favorable to the government, we find there was sufficient evidence for the jury to find McCarter guilty beyond a reasonable doubt of aiding and abetting in the solicitation and receipt of briberies and gratuities.

### C. Counts 59 and 60

Luney argues that the district court abused its discretion in declining to sever Counts 59 and 60 prior to the trial. Counts 59 and 60 charged Luney with embezzlement stemming from two checks Luney received from THAP. Luney obtained the first check, in the amount of $6,510.68, in 1997, and the second check, in the amount of $5,000.00, in 1999. The government alleged that Luney received each of these checks from THAP immediately after his personal checks to the IRS bounced. Initially, the district court denied Luney's motion to sever

20

charges 59 and 60; however, after the government rested, the district court granted Luney's motion for judgment of acquittal on these two charges.

Denial of a motion to sever charges is reviewed for abuse of discretion. *United States v. Cole*, 755 F.2d 748, 762 (11th Cir. 1985). "To demonstrate an abuse of discretion, appellants must establish that they 'suffered compelling prejudice against which the trial court was unable to afford protection.'" *Id. (*citing *United States v. Russell*, 703 F.2d 1243, 1247 (11th Cir. 1983)).

During the government's presentation of its case, it presented only two exhibits relating to these charges. These exhibits were arguably related to the other charges against Luney; however, even if Luney is correct that the government misjoined Counts 59 and 60, Luney fails to show that he suffered sufficient prejudice to warrant reversal on this issue.

**D.     LaBrake's Sentencing**

LaBrake argues that the district court erred in enhancing his offense level by 10 based on the court's finding of fact regarding the amount of loss involved with his offenses. LaBrake claims the district court violated his Sixth Amendment rights and *United States v. Booker*, 543 U.S. 220 (2005), because the amount of loss was not charged in his indictment or found by a jury. LaBrake also asserts the district court violated his constitutional rights when it enhanced his offense level

based on his role in the offense and his participation in more than two bribes because the jury had not explicitly found such facts.

We review sentencing issues raised for the first time on appeal for plain error.[6] *United States v. Aguillard*, 217 F.3d 1319, 1320 (11th Cir. 2000). "For this Court to correct plain error: (1) there must be error; (2) the error must be plain; and (3) the error must affect substantial rights." *Aguillard*, 217 F.3d at 1320 (citing *United States v. Stevenson*, 68 F.3d 1292, 1294 (11th Cir. 1995)). If these requirements are met, we may then exercise our discretion and correct the error if it "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *U.S. v. Olano*, 507 U.S. 725 (1993) (quoting *United States v. Young*, 470 U.S. 1, 15 (1985) ).

This Court has held that, after *Booker*, it is not a constitutional error for a district court to make extra-verdict factual findings or factual determinations that go beyond a defendant's admissions, so long as the court considers the guidelines advisory, rather than mandatory. *United States v. Rodriguez,* 398 F.3d 1291, 1300-01 (11th Cir. 2005); *United States v. Chau*, 426 F.3d 1318, 1323-24 (11th Cir. 2005). Here, the district court explicitly stated that the sentencing guidelines were

---

[6]  LaBrake contends plain error review is inappropriate, arguing that this appeal is not the first time he raised issues regarding his sentence. Although LaBrake raised non-constitutional objections before the district court as to the amount of loss and role enhancements, none of LaBrake's objections raised the constitutional issues he now appeals. Therefore, the Court will review the sentencing issues for plain error.

advisory. Accordingly, we find LaBrake suffered no violations of his Sixth Amendment rights with respect to his sentence.

The judgment of the district court is affirmed.

AFFIRMED.