UNITED STATES of America

v.

Rodger EDMONDS.

Crim. No. 90–393–04 (CRR).

United States District Court, District of Columbia.

June 4, 1991.

Patricia M. Haynes, Asst. U.S. Atty., and Jay B. Stephens, U.S. Atty., for U.S.

Frederick A. Douglas and Natalie O. Ludaway of Leftwich, Moore & Douglas, Washington, D.C., for defendant.

## MEMORANDUM OPINION

CHARLES R. RICHEY, District Judge.

### I. INTRODUCTION

On May 7, 1991, Rodger Edmonds was convicted on three criminal counts: (1) conspiracy to distribute 50 or more grams of cocaine base in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(iii) and 846; (2) distribution of 50 or more grams of cocaine base in violation of 21 U.S.C. § 841(a), 841(b)(1)(A)(iii) and 18 U.S.C. § 2; and (3) distribution of a controlled substance within 1,000 feet of a school in violation of 21 U.S.C. § 841(a), 845a and 18 U.S.C. § 2. Pursuant to Federal Rule of Criminal Procedure 29(c), Edmonds now renews his motion for a judgment of acquittal. In the alternative, Edmonds requests a new trial based on the insufficiency of the evidence pursuant to Federal Rule of Criminal Procedure 33. Upon consideration of the Motion for Judgment of Acquittal and Motion for New Trial, the Government's opposition thereto, the record herein, and the applicable law, the Court hereby denies the Motion for Judgment of Acquittal and denies the Motion for a New Trial.

### II. BACKGROUND

Rodger Edmonds was charged with conspiracy to distribute 50 or more grams of cocaine base, distribution of 50 or more grams of cocaine base, and distribution of a controlled substance within 1,000 feet of a school. Three other individuals—Ali Zamani, Julius Harrison and Anthony Morse—were also charged as co-conspirators.[1] All

---

1. Count One of the Indictment charged all four defendants with conspiracy to distribute 50 or more grams of cocaine base in violation of 21 U.S.C. §§ 841(a), 841(b)(1)(A)(iii) and 846. Count Two charged only Ali Zamani with unlawful use of a communications device to facilitate the distribution of cocaine base in violation of 21 U.S.C. § 843(b), and Count Three charged Julius Harrison with the same offense of unlaw-

ful use of a communications device. Count Four charged Julius Harrison, Anthony Morse and Rodger Edmonds with distribution of 50 or more grams of cocaine base in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(iii); and 18 U.S.C. § 2. Count Five charged Harrison, Morse and Edmonds with distributing a controlled substance in, on or within 1,000 feet of real property comprising Stuart Junior High

four were to be tried together. However, on the day of trial, Julius Harrison and Anthony Morse pled guilty.[2] The trial of the remaining defendant, Ali Zamani, was severed from the other defendants due to Zamani's serious medical condition. His trial will commence on July 10, 1991.

Thus, on March 12–15, 1991, the defendant Rodger Edmonds was tried alone. The jury deliberated for approximately two days, and inadvertently indicated on a note to the Court that it was unable to reach a verdict, despite the fact the eleven jurors favored conviction, because one juror "refused to deliberate further." *Jury Note*, March 15, 1991 at 10:15 a.m. After two more hours passed without a break in the stalemate, the Court declared a mistrial. The Government reinstituted the charges against the Defendant Edmonds and he was tried again on the same three counts on May 6, 1991. For this second trial, the Defendant retained new counsel. Moreover, in contrast to the first trial, the Defendant declined to testify on his own behalf. At this second trial, the jury convicted the Defendant on all three counts.

Based upon the trial testimony and exhibits, the Government case against the four co-defendants revolves around an alleged scheme to sell drugs to someone who, unbeknownst to the defendants, was an undercover DEA agent. The undercover DEA agent contacted Ali Zamani, a bartender at a local restaurant, and asked Zamani to find cocaine. Acceding to several requests from the undercover agent, Zamani contacted Julius Harrison in the hopes of obtaining some crack cocaine. Harrison then contacted the Defendant Edmonds in order to obtain cocaine. Harrison set up the actual date and time of the transaction with the DEA undercover agent and met the agent at the pre-arranged time and place. Anthony Morse and the Defendant Edmonds were also present when the transaction was consummated, allegedly acting as part of the "team" participating in the deal.

At trial and in its brief opposing the Defendant's Motion, the Government focused on the testimony of two witnesses in proving its case against the Defendant Edmonds. First, Julius Harrison testified in detail about the Defendant Edmonds' role as Harrison's drug supplier. According to Harrison, Edmonds supplied the crack cocaine and was present when the transaction was consummated. Harrison claimed that Edmonds played an important role in negotiating the sale and that Edmonds also functioned as a look-out.

The Government also stressed the importance of testimony given by DEA Special Agent Ron Kahn. Agent Kahn was part of the DEA surveillance team monitoring the transaction. Agent Kahn observed the Defendant Edmonds conferring with Julius Harrison at least twice during the time in which Harrison was negotiating the terms of sale with the DEA agents. According to Kahn's observation, Harrison left the DEA agent's car and conferred with the Defendant Edmonds before returning to speak to the DEA agent. Moreover, according to Agent Kahn, Edmonds was a look-out for the transaction, driving his car to the intersection of Third and "E" Streets with a full view of the area in which Harrison was making the exchange with the undercover agent. Agent Kahn testified that Edmonds

School in violation of 21 U.S.C. §§ 841(a)(1), 845a, and 18 U.S.C. § 2. The Government dismissed Counts Six and Seven of the Indictment, charging Edmonds and Morse with possession with intent to distribute 5 or more grams of cocaine base in violation of 21 U.S.C. §§ 841(a)(1); 841(b)(1)(B)(iii), and possession with intent to distribute cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C), after the Court granted the defendants' motion to suppress physical evidence.

**2.** Both Harrison and Morse pled guilty only to the conspiracy to distribute 50 or more grams of cocaine base charged in Count One of the In-

dictment. The Government dismissed the remaining counts of the Indictment against these defendants. The plea agreement advised that the defendants could receive the benefit of a motion from the government requesting a substantial assistance departure from the guideline sentence, pursuant to 18 U.S.C. § 3553(e) and § 5K1.1, if the defendant provided such substantial assistance. The prosecutor agreed to present such motion to the U.S. Attorney's Departure Committee, but no promise was made that the government would ultimately file such a departure motion with the Court.

was looking in the direction of the DEA car and appeared to be watching the transaction unfold. Also, Agent Kahn observed Edmonds flee from the scene as soon as the police converged on the car in which the DEA agents were sitting. The police cornered Edmonds as he allegedly tried to escape. Edmonds was then arrested.

In his defense, Edmonds argues that he was at the wrong place at the wrong time and had no knowledge of the drug activities taking place. According to Edmonds, the Government's evidence is insufficient to sustain a verdict of guilty on any of the three counts. Edmonds contends that the Government's evidence is circumstantial, is based upon an unreliable source (Julius Harrison), and cannot support inferences sufficient to find him guilty of the crimes charged beyond a reasonable doubt. Alternatively, Edmonds claims that the weaknesses in the Government's case, combined with a letter from Anthony Morse absolving Edmonds of any responsibility for the crime, warrants a new trial.

### III. ANALYSIS

A. THE DEFENDANT'S MOTION FOR A JUDGMENT OF ACQUITTAL MUST BE DENIED AS THERE IS A SUFFICIENT BASIS UPON WHICH A JURY COULD FIND BEYOND A REASONABLE DOUBT THAT THE DEFENDANT COMMITTED THE CRIMES CHARGED.

■ The Court must deny a Motion for Judgment of Acquittal when, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Poston,* 902 F.2d 90, 94 (D.C.Cir.1990) (emphasis in original) (*quoting Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979)). Courts accord great deference to juries and allow the jury's determination to stand even when the court may have reached a different conclusion; "[w]hen a reasonable mind might fairly have a reasonable doubt of guilt or might fairly have

none, the decision is for the jury to make." *United States v. Herron,* 567 F.2d 510, 514 (D.C.Cir.1977); *see also United States v. Bethea,* 442 F.2d 790, 792 (D.C.Cir.1971). This standard recognizes that courts give "full play to the right of the jury to determine credibility, weigh the evidence, and draw justifiable inferences of fact." *United States v. Reese,* 561 F.2d 894, 898 (D.C. Cir.1977); *see also United States v. Sutton,* 801 F.2d 1346, 1358 (D.C.Cir.1986). Accordingly, "there is no requirement of direct evidence against the defendant; the evidence may be entirely circumstantial." *United States v. Poston,* 902 F.2d at 94, n. 4; *see also United States v. Simmons,* 663 F.2d 107, 108 (D.C.Cir.1979).

The Defendant claims that there is insufficient evidence to support a verdict because "there is no direct evidence of guilt" and "the circumstantial evidence is so ambiguous that it is as consistent with innocence as with guilt." *Defendant's Motion* at 3. These claims must fail, however. First, as explained above, there is no requirement of any direct evidence of guilt if there exists sufficient circumstantial evidence to support the verdict. *See Poston, supra* and cases cited therein. Second, when taken as a whole, the evidence in this case can sustain a conviction on all counts.

■ Based upon the testimony offered at trial, a reasonable jury could find that an agreement existed between two or more persons to distribute the drugs and that the Defendant Edmonds knowingly and intentionally participated in the group effort with the specific intent to distribute the cocaine. *See United States v. Pumphrey,* 831 F.2d 307 (D.C.Cir.1987); *United States v. Hardy,* 730 F.Supp. 1141, 1143 (D.D.C. 1990). "[I]t is unusual to have direct evidence of the conspiracy. Circumstantial evidence, including inferences from a 'development and a collection of circumstances,' suffices to prove participation in a conspiracy." *United States v. Wood,* 879 F.2d 927, 938 (D.C.Cir.1989) (*quoting Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942)).

Here, the testimony of Julius Harrison directly placed Edmonds as part of the

group working together to supply cocaine to the undercover agent. Harrison explained that he obtained the drugs from Edmonds, that Edmonds knew that the drugs were to be sold to someone else, and that Edmonds actually participated in the final transaction. Although Harrison did pled guilty to some of the offenses charged against him, the jury was advised of Harrison's plea and was cautioned about the nature of his testimony.[3] The jury was free to accept or reject this testimony, and the Court cannot override such determinations of credibility.

Moreover, the facts related by Agent Kahn buttress Harrison's assertions of Edmonds' involvement in the group effort. Certainly, Agent Kahn's testimony gives the Court a basis to believe that Edmonds agreed to help Julius Harrison to sell the drugs. Kahn's testimony supports the claim that Edmonds played a vital role in the scheme by helping in the negotiations and by serving as a look-out. This is the type of circumstantial evidence from which a jury could infer an agreement existed, and that Edmonds knowingly and intentionally acted to assist the sale of the drugs.

■■■ Likewise, there exists sufficient evidence upon which a jury could find beyond a reasonable doubt that the defendant Edmonds distributed 50 or more grams of a mixture or substance containing cocaine base, or "crack", or, in the alternative, that the defendant Edmonds aided and abetted the distribution of the drugs. There is sufficient evidence upon which the jury could find beyond a reasonable doubt that the Defendant Edmonds knowingly and intentionally transferred or delivered drugs to another person. Based on Julius Harrison's testimony and Agent Kahn's corroborating statements, Edmonds transferred the drugs to Harrison, and then participated in the transfer of the drugs to the undercover agent by serving as an adviser and look-out. The law does not require that the Defendant Edmonds actually performed the act of transferring the drugs to the undercover agent. A constructive transfer is sufficient. *See United States v. Waller,* 503 F.2d 1014, 1015–16 (7th Cir. 1974), *cert. denied,* 420 U.S. 932, 95 S.Ct. 1137, 43 L.Ed.2d 406 (1975) (rejecting defendant's argument that she did not distribute the drugs because she did not physically hand them over to the purchaser). The law also does not require that the Defendant Edmonds received any money in exchange for the drugs. *See, e.g., United States v. Coady,* 809 F.2d 119, 124 (1st Cir.1987).

■■ In the alternative, there is ample evidence from which the jury could find beyond a reasonable doubt that Edmonds aided and abetted the distribution of the drugs. In order to show that the Defendant aided and abetted the distribution, the Government had to demonstrate that someone committed the crime of distribution; that Edmonds had the specific intent to facilitate the commission of this crime; and that Edmonds assisted or participated in the crime having some knowledge of criminal acts taking place. *See United States v. Raper,* 676 F.2d 841, 849 (D.C.Cir.1982). Based upon the testimony of Julius Harrison and the corroborating statements of Agent Kahn, the jury could reasonably conclude beyond a reasonable doubt that the crime of distribution of 50 or more grams was committed by someone—such as Julius Harrison. Moreover, the jury could conclude beyond a reasonable doubt that, by providing the drugs to Harrison, by advising Harrison during the negotiations in the alley with the DEA agent, and by serving as a look-out, Edmonds participated in the commission of the offense and had knowledge that a drug sale was contemplated by his friend Mr. Harrison.

---

**3.** The Court's Jury Instructions put the jury on notice of Harrison's unique relationship to this case. In relevant part, the Court advised: "You should bear in mind that a witness who has entered into such an agreement has an interest in this case different than an ordinary witness. A witness who realizes that he may be able to obtain his own freedom or receive a lighter sentence by giving testimony favorable to the government has a motive to testify favorably to the government. Therefore, you should examine his testimony with caution and care. After doing this, you may decide to accept the testimony or you may give it whatever weight, if any, you find it fairly deserves." Jury Instructions at 12.

Even assuming that the jury did not credit Harrison's claim that Edmonds provided the drugs, the evidence from Agent Kahn was sufficient for the jury to find beyond a reasonable doubt that the Defendant aided and abetted the distribution of cocaine base. According to Agent Kahn, the defendant was present at the scene during the time the negotiations transpired, was observed performing certain advisory and look-out functions, and fled from the scene as soon as the police moved in to arrest Julius Harrison, who was positioned at the DEA agent's car. From this evidence, the jury could infer that the defendant had knowledge that a drug transaction was in progress and that the defendant performed certain acts, with an unlawful purpose, to facilitate the commission of the crime. *See Poston,* 902 F.2d at 93, n. 2 (fact that defendant had knowledge of the others' intention to distribute the drugs and provided them a ride to the scene is sufficient for aiding and abetting the distribution of the drugs).

 For the same reasons, the jury's verdict with respect to the distribution of a controlled substance within 1,000 feet of a public school must stand. In order to prove the elements of this crime, the Government had to prove beyond a reasonable doubt that Edmonds distributed the cocaine base and that this act occurred within 1,000 feet of the public school. Alternatively, the Government had to show that the Defendant aided and abetted the distribution of the drugs in the school area. There is no requirement that the Defendant had knowledge that the drugs were distributed within 1,000 feet of the public school area. *See United States v. Holland,* 810 F.2d 1215, 1222–24 (D.C.Cir. 1987), *cert. denied,* 481 U.S. 1057, 107 S.Ct. 2199, 95 L.Ed.2d 854 (1987) ("Congress' heightened interest in protecting children ... amply supports its decision not to require a showing of mens rea of the proximity of a school."). The proximity to the public school was never disputed by the defense. Therefore, because the evidence supported the verdict as to the distribution count and because the other element of this crime—the proximity to the school—went

undisputed, the jury verdict as to this count must stand.

**B. THE DEFENDANT'S REQUEST FOR A NEW TRIAL MUST BE DENIED BECAUSE HE ADVANCES NO NEW EVIDENCE AND BECAUSE THE VERDICT RENDERED BY THE JURY DOES NOT REPRESENT A MISCARRIAGE OF JUSTICE.**

 The decision to grant a new trial based upon the insufficiency of the evidence is one committed to the Court's discretion. *United States v. Mangieri,* 694 F.2d 1270 (D.C.Cir.1982). The Court may grant the motion for a new trial if it finds that a new trial is "in the interest of justice." Fed.R.Crim.P. 33. In order to grant a new trial, "the evidence must preponderate heavily against the verdict, such that it would be a miscarriage of justice to let the verdict stand." *United States v. Martinez,* 763 F.2d 1297, 1313 (11th Cir.1985). *See also United States v. Wiley,* 517 F.2d 1212 (D.C.Cir.1975); *United States v. Lincoln,* 630 F.2d 1313, 1319 (8th Cir.1980). This power should be exercised with caution, and is invoked only in those exceptional cases in which the evidence weighs heavily against the verdict. *See Martinez,* 763 F.2d at 1313; *United States v. Indelicato,* 611 F.2d 376, 387 (1st Cir.1979); *United States v. Lincoln,* 630 F.2d at 1319. *See also* 3 C. Wright, *Federal Practice & Procedure: Criminal 2d* § 553, at 248 (1982) (hereinafter, "Wright, *Criminal 2d* "). The burden of proof that a new trial is justified rests with the party seeking the new trial. *See Mangieri,* 694 F.2d at 1285 (*citing, United States v. Reese,* 561 F.2d 894, 902 (D.C.Cir.1977)).

 However, the Court evaluates a Rule 33 motion from a different vantage point than it evaluates a Rule 29 Motion for Judgment of Acquittal. In a Rule 33 Motion for a new trial based upon the insufficiency of the evidence, the Court need not accept the evidence in the light most favorable to the government, and the Court may weigh the testimony and may consider the credibility of the witnesses. *See United*

*States v. Wiley*, 517 F.2d at 1217 n. 24; *Martinez*, 763 F.2d at 1312. The Court may grant a motion for new trial "only where the credibility of the government's witnesses had been impeached and the government's case had been marked by uncertainties and discrepancies." *Martinez*, 763 F.2d at 1313. However, the Court "may not reweigh the evidence and set aside the verdict simply because it feels some other result would be more reasonable." *Martinez*, 763 F.2d at 1312–13.

Edmonds claims that the verdict should be set aside for essentially three reasons: (1) the Court should disregard the testimony of Julius Harrison because he is a "self-described liar;" (2) there is no direct evidence linking Edmonds to the crime; and (3) there is a written statement from Anthony Morse, which was not offered into evidence at the trial, exonerating Edmonds from any responsibility for the crimes charged in this Indictment. *See Defendant's Motion* at 5–8. For the reasons described below, the Court finds that there is sufficient evidence upon which to convict Edmonds on all three counts, that the evidence does not preponderate heavily against the verdict and that the interests of justice do not demand a new trial.

■ Although defense counsel challenged the credibility of Julius Harrison's testimony at trial, the Court does not find that Harrison's testimony should be entirely disregarded. Harrison may have lied about his past drug use. Given the terms of his plea agreement, Mr. Harrison also may have some incentive to testify favorably for the government. The Court cannot evaluate these challenges to Harrison's credibility in a vacuum, though. Agent Kahn's testimony corroborated many of Harrison's allegations and, because much of Harrison's testimony was corroborated, the Court will not disregard Harrison's testimony.

Specifically, Agent Kahn's testimony about Edmonds' presence at the scene of the crime, his consultation with Harrison at that time, and the position of Edmonds' car at various points during the transaction supports the conclusion that Edmonds knew that drugs were being sold to the undercover agent, and that Edmonds provided assistance to Harrison by serving as a look-out. Thus, even without Julius Harrison's allegation that Edmonds provided the crack cocaine, there is sufficient corroborated evidence to find Edmonds responsible for the crimes charged.

■ Edmonds' claim that there is no direct evidence linking him to the crime really misses the point. As explained previously, there is no requirement that the government have direct evidence linking a defendant to the crime. Circumstantial evidence, standing alone, may be sufficient. *See Poston, supra,* and cases cited therein. In this case, there is the testimony of Julius Harrison as well as the corroboration provided by Agent Kahn. This provides sufficient evidence to convict the defendant. Moreover, the defendant does not identify any discrepancies or internal inconsistencies in the government's evidence. This lack of any inconsistency in the government's case distinguishes this case from the case of *United States v. Simms*, 508 F.Supp. 1188, 1207–08 (W.D.La.1980), relied upon by the defendant. In *Simms*, the Court upended the jury's verdict because "[t]he evidence presented by the government is marked by uncertainties and discrepancies which fail to prove defendant's participation in an illegal conspiracy. . . ." *Id.* Given the lack of any internal inconsistencies and the existence of corroborating evidence, there is no basis to reject inferences drawn by the jury from the testimony in this case.

■ Finally, the defendant contends that allowing the jury's verdict to stand would affect a serious miscarriage of justice because there exists a letter written by co-defendant Anthony Morse exonerating Edmonds of responsibility for these crimes.[4] Although courts may grant a motion for new trial when there is newly-dis-

---

4. The handwritten letter was notarized. In it, Anthony Morse states that "Co–Defendant Rodger Edmonds did not know or have anything to do with my selling of cocaine base to the undercover DEA agent, August 29, 1990 in the area of 3rd and 'D' St, N.E., Washington, D.C."

covered evidence material to the issues in the case, the party seeking a new trial must demonstrate: (1) that the evidence was discovered since the trial; (2) that the party seeking a new trial exercised due diligence to find the evidence; (3) that the evidence would not merely be cumulative or impeaching; (4) that it is material to the issues involved; and (5) that the evidence is of such value that it would probably produce an acquittal. *See Mangieri*, 694 F.2d at 1285 (*citing Thompson v. United States*, 188 F.2d 652, 653 (D.C.Cir.1951)).

▇ Edmonds cannot meet these rigorous standards. This letter from Mr. Morse was not offered into evidence at Edmonds' second trial despite the fact that Edmonds himself had possession of this letter and submitted it to the Court during his first trial as part of his effort to replace his legal counsel. The letter from Anthony Morse was made part of the official file in this case on March 13, 1991. The letter was available to the defendant's counsel in advance of the second trial and any reasonably diligent attorney would have investigated the official file for such smoking guns. Clearly, this evidence is not "new" and cannot form the basis for a Motion for a new trial.

Apparently, the defense made a tactical decision not to introduce this evidence and not to subpoena Mr. Morse. This tactical decision cannot support a claim for a new trial:

> Where the allegedly newly discovered evidence was known to the defense or readily obtainable by it before or during the trial and the defense trial strategy was not to utilize such known or obtainable evidence during the trial, the decision by the defense to change its strategy after an unfavorable verdict does not render the evidence "newly discovered."

*United States v. Soblen*, 203 F.Supp. 542, 565 (S.D.N.Y.1961), *aff'd*, 301 F.2d 236 (2d Cir.1962), *cert. denied*, 370 U.S. 944, 82 S.Ct. 1585, 8 L.Ed.2d 810 (1962). *See also United States v. Beasley*, 582 F.2d 337 (5th Cir.1978); *United States v. Alberici*, 618 F.Supp. 660, 670 (E.D.Pa.1985); Wright, *Criminal 2d* § 557, at 317–19. If any-

thing, allowing the defense to introduce and consider this evidence now would be a miscarriage of justice because it would allow defense counsel to make strategy decisions with impunity and would deprive the government of any reasonable opportunity to rebut the evidence or impeach the witness.

▇ Finally, even assuming, *arguendo*, that the letter from Anthony Morse is newly discovered evidence, the Court finds that this evidence is not of sufficient credibility to warrant a new trial. The official records in this case reveal that, in the midst of the first trial, Edmonds himself gave the Court *two* letters from Mr. Morse. Both letters were entered into the official record and were date-stamped by the Clerk of the Court on March 13, 1990. One of those letters, notarized on November 30, 1990, was attached to the instant Motion. However, the second letter from Morse, notarized on October 30, 1990 and also absolving Edmonds of responsibility for the charges, was not included with the instant Motion.

In this October 30, 1990 letter, Morse wrote that "I Anthony Morse have already entered my guilty plea in this case." This statement is false on its face. Anthony Morse did not plead guilty until March 11, 1991, the day of trial. Such an "error" raises serious questions about Morse's credibility. Failing to reference both letters in the instant Motion raises doubts as to Edmonds' credibility as well. Because this October 30, 1990 written statement has certain indicia of having been "cooked" in advance, the Court does not believe that Morse's affidavits tend to prove that Edmonds did not knowingly participate in the crimes charged.

## IV. CONCLUSION

Through the testimony of Julius Harrison and Agent Kahn, the government has presented sufficient credible evidence supporting the charges against Rodger Edmonds. The jury weighed the evidence and decided to accept the contentions of the government, after considering Edmonds' claims that he was duped by his friends

and was the victim of circumstances. There is no basis to reject the jury's findings of fact, and no reason to believe that applying the inferences made by the jury to the applicable law would result in a miscarriage of justice. Accordingly, the Court shall deny the defendant's Motion for a Judgment of Acquittal and also shall deny the defendant's Motion for New Trial.