**UNITED STATES of America**

v.

**David Adrian KINARD, Defendant.**

**Crim. No. 91–257–03.**

United States District Court, District of Columbia.

April 2, 1992.

Michael R. Bromwich, Dan M. Kahan, Mayer, Brown & Platt, Washington, D.C., for defendant.

## MEMORANDUM OPINION AND ORDER

SPORKIN, District Judge.

The defendant, David Kinard, was charged in an indictment with one count of distributing cocaine base, one count of possession of cocaine base with the intent to distribute, and with aiding and abetting the above. The indictment charged two other individuals, Edward Earl Clark and Shea Robert Taylor, with the same violations. All three defendants were convicted of all charges by a jury after trial. Counsel for the defendant Kinard provided good representation at trial, and he made a motion for a judgment of acquittal at the close of the government's case, Tr., 239, and at the close of the trial, Tr., 321. However, counsel failed to make a timely motion for judgment of acquittal after the jury returned its verdict, even though the Court granted all counsel thirty days in which to do so. The Court was concerned about this omission in light of the facts of the case. Therefore, the Court appointed new counsel to represent the defendant and to file such motions as counsel deemed appropriate. Counsel for Mr. Kinard has now filed a motion for judgment of acquittal notwithstanding the jury's verdict or in the alternative for a new trial.[1] The Court held a hearing on this motion on March 18, 1992 and is now prepared to rule on it.

### A. *Facts*

Defendant Kinard has been in jail since April 4, 1991, almost one full year. He was arrested moments after the events that are the basis for the charges occurred. On April 4, 1991, at approximately 6:30 p.m., an undercover police officer named Theodora Gregory and her undercover partner Timothy Harris approached a group of people gathered outside some buildings in the

Eric Acker, Asst. U.S. Atty., Washington, D.C., for the government.

---

1. Although this motion was filed outside the seven day time limit imposed by Fed.R.Crim.P. 29 and Fed.R.Crim.P. 33, as well as the thirty day time limit granted by the Court after the jury rendered its verdict, the government has waived any objection to the late filing of the motion.

2600 block of Sheridan Road, Southeast. Defendant Kinard was in this group as were defendants Clark and Taylor. Officer Gregory approached the group and asked either "Who's working?" or "Who's holding?" After she asked the question, defendant Clark asked defendant Kinard to check out a blue car that had just turned from Pomeroy Road into Sheridan Road. Tr., 28. Defendant Kinard proceeded to walk toward the blue car. While Kinard was away from the group, defendant Clark directed defendant Taylor to retrieve a stash of drugs that was kept behind a brick wall several feet away from where defendant Clark and Officer Gregory were standing. Defendant Taylor responded to this instruction, going behind the wall to where the drugs were located. Defendant Kinard then returned and said something to defendant Clark. Taylor then proceeded to hand a ziplock bag containing crack cocaine to Officer Gregory. Taylor received $50 in return. Officers Gregory and Harrison then left the scene. Shortly thereafter, on a description provided by the undercover officers, defendants Kinard, Clark and Taylor were arrested by a back-up team.

## B. Sufficiency and Weight of the Evidence Against Kinard

■ The evidence submitted against defendant Kinard is scant at best. There was no testimony indicating that he had drugs or money on his person when he was arrested. Officer Rodriguez testified that defendant Clark was holding $309 as well as all of the prerecorded police funds at the time of the arrest. Tr., 152. The testimony of the police officers shows only that defendant Clark asked Kinard to walk down the block and check out a blue car. Kinard did that. Kinard then returned to Clark and said something to him. Those were all the actions Kinard took. There was no evidence that he knew where the drugs were or that he received any profit from the transaction or in fact that he was aware a drug transaction was about to occur. To the best of his recollection, Officer Harrison testified that Clark told Kinard to go to the corner and see what the blue car was doing. Tr., 178. Officer Har-

rison also testified that as Kinard returned from the corner, Kinard said to Clark "go ahead." Tr., 196. It is unclear why Kinard was asked to look at the car and also unclear what Kinard meant when he said "go ahead." Clark and Taylor had already revealed the location of the stash before they knew what Kinard would report. Kinard himself never testified. The other two defendants did testify, but neither implicated defendant Kinard in this offense. See Tr., 264–276 (Defendant Taylor's testimony); Tr., 284–303 (Defendant Clark's testimony).

■ Before the trial, defendant Kinard asked for a severance, and the Court denied his motion. That may well have been an error on the Court's part that at least merits the granting of a new trial. The weight of the meager evidence against Kinard was modest at best, and the verdict against the defendant was clearly tainted by the overwhelming evidence against defendants Clark and Taylor. The Court has the discretion to grant a new trial, see Fed.R.Crim.P. 33, and shall use it where a new trial is "in the interest of justice." Where, as in this case, the "evidence weighs heavily against the verdict," a new trial may well be warranted. See United States v. Edmonds, 765 F.Supp. 1112, 1118 (D.D.C.1991). The Court finds initially that the jury's verdict was against the weight of the evidence submitted at trial. The evidence against defendant Kinard was so scant that it failed to support fully the government's theory of culpability.

## C. Defendant's Motion for Judgment of Acquittal Notwithstanding the Jury's Verdict

■ The circumstantial evidence against the defendant has been interpreted by the government as consistent with guilt. This interpretation is not borne out by sufficient evidence. It is the government's contention that Kinard was serving as a "lookout," for the police. The government presented an expert witness who described what a look-out does and how he participates in a drug transaction. However, the "look-out" theory is just that: an interpre-

tation of the evidence and not evidence itself. A defendant may not be convicted because the facts presented are merely susceptible to an interpretation of guilt. There must be sufficient evidence, direct or circumstantial, to support the interpretation beyond a reasonable doubt in the eyes of reasonable jurors.

In this case, the "look-out" interpretation is not adequately supported by the evidence. There is no evidence that Kinard knew a drug transaction would take place, that he knew the whereabouts of the drugs, that he exercised any control over the drugs, or that he was profiting from the hand-to-hand deal conducted by defendant Taylor. Moreover, other interpretations of the circumstantial case are readily supported by the evidence. There was testimony that people in the group that the officers approached were gambling. Tr., 280, 291. Kinard may have been sent to see if the blue car contained police who might have been investigating the gambling.[2] Clark testified that he was waiting for a ride and that he sent Kinard to see whether the car was in fact the person coming to get him. Tr., 288. The government did not offer sufficient evidence to support its interpretation of events or to eliminate the possibility that these other theories were true. The fact that a drug transaction was taking place in defendant Kinard's vicinity is not sufficient evidence to sustain a conviction for aiding and abetting distribution of drugs or aiding and abetting possession of drugs with the intent to distribute.

■■■■ Although a jury's verdict is entitled to great deference, it must rest on an adequate foundation. On a motion for judgment of acquittal, the court must inquire whether reasonable jurors could have found the defendant guilty beyond a reasonable doubt. No reasonable juror could vote to convict based on the evidence submitted against defendant Kinard. Therefore, in accordance with the law of this circuit, the Court will enter a judgment of acquittal for the defendant. *See United States v. Poston,* 902 F.2d 90, 94 (D.C.Cir. 1990); *United States v. Herron,* 567 F.2d 510, 514 (D.C.Cir.1977). The Court is convinced that there is no other evidence that could be mustered against Kinard that would support a guilty verdict despite the government presenting a full and complete case. It failed to produce sufficient evidence to sustain its theory. A new trial could not overcome this failing and is therefore not indicated. At a minimum, there must be sufficient evidence to support a theory of culpability, in order to allow reasonable jurors to find the defendant guilty beyond a reasonable doubt. The government simply lacked sufficient evidence to support its theory in this case. Accordingly, the defendant's motion for a judgment of acquittal notwithstanding the jury's verdict will be granted.

An appropriate order accompanies this opinion.

### ORDER

Having considered the arguments of the government and of the defendant and having reviewed the record in the case, it is this first day of April, 1992, hereby

ORDERED that defendant's Motion for a New Trial is granted. The defendant is entitled to a new trial because the Court erred in not granting the defendant a severance. However, the new trial is stayed because of the Court's decision to grant the defendant judgment of acquittal notwithstanding the jury's verdict; and it is

FURTHER ORDERED that defendant's Motion for Judgment of Acquittal notwithstanding the jury's verdict is granted. A judgment of acquittal shall be entered for the defendant and he shall be released immediately from any custody resulting from his indictment and conviction in this case.

---

**2.** Even if defendants Clark and Kinard were concerned about police in the vicinity, there is no evidence to show that Kinard was concerned because of his involvement in drug sales. He could have been concerned because of the gambling. Whatever reasons Clark may have had for dispatching Kinard to look at the car, there is no evidence indicating why Kinard thought he was looking at the car.