**UNITED STATES of America, Appellee,**

v.

**Rodger EDMONDS, Appellant.**

**No. 91–3331.**

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 15, 1995.

Decided Nov. 17, 1995.

Peter M. Brody, appointed by the court, Washington, D.C., argued the cause, for the appellant.

Michael N. Levy, Assistant United States Attorney, argued the cause for appellee, with whom Eric H. Holder, Jr., United States Attorney, and John R. Fisher and Roy W. McLeese, III, Assistant United States Attorneys, were on the brief for the appellee. Elizabeth Trosman, Assistant United States Attorney, entered an appearance.

Before: BUCKLEY, WILLIAMS and HENDERSON, Circuit Judges.

PER CURIAM:

Defendant Edmonds appeals his narcotics convictions. He argues for reversal because "other crimes" evidence and other testimony was, he alleges, erroneously admitted. He also challenges the sufficiency of the evidence as well as the constitutionality of one of the statutes he was convicted of violating. We affirm.

## I. Facts

In the early evening of August 29, 1990 Rodger Edmonds and Anthony Morse were sitting in a car near Union Station in the District of Columbia. At the same time, Julius Harrison and Gary Davis, a Drug Enforcement Agency (DEA) special agent who was working undercover, met at Union Station to complete an exchange of drugs for money. After Special Agent Davis showed Harrison his money, Harrison walked to where Edmonds and Morse were waiting. According to Harrison, Edmonds showed him some drugs. Harrison returned to Davis but Davis refused to give him the money before receiving the drugs. Harrison walked back

to Edmonds and Morse. After a conversation, both Edmonds, who was in the driver's seat, and Morse got out of the car. Harrison followed Morse into an alley while Edmonds sat on a nearby stoop. Morse removed drugs from under a rock in the alley and accompanied Harrison to Davis's car with the drugs. Edmonds left the stoop for his car, which had the engine running, and watched Harrison and Morse walk toward Davis. After a signal from Davis, other DEA agents who had been in the area observing arrested Edmonds, Morse and Harrison.

Edmonds was charged with conspiracy to distribute more than fifty grams of cocaine base (crack) in violation of 21 U.S.C. §§ 846, 841(a)(1) and 841(b)(1)(A)(iii); aiding and abetting the distribution of crack in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(iii) and 18 U.S.C. § 2; and aiding and abetting the distribution of crack within one thousand feet of a school in violation of 21 U.S.C. §§ 841(a)(1) and 845(a)[1] and 18 U.S.C. § 2. At his first trial, the jury hung. After a second trial, he was convicted on all three counts. On December 11, 1991 the district court sentenced Edmonds to 175 months' imprisonment and five years of supervised release on each of the first two counts and 175 months' imprisonment and ten years of supervised release on the schoolyard count, all prison terms to run concurrently.

Edmonds's notice of appeal, filed on December 18, 1991, was stayed by this Court pending the disposition of his *pro se* motion for release pending appeal and his section

2255 motion. The district court denied the motion for release and we affirmed on September 9, 1993. The district court then denied the section 2255 motion. *United States v. Edmonds,* 870 F.Supp. 1140 (D.D.C.1994). Edmonds requested new appointed counsel for the section 2255 appeal and moved to consolidate that appeal with his direct appeal. On March 8, 1995 we denied his two requests and on April 27, 1995 we summarily affirmed the lower court's denial of his section 2255 motion. We now affirm Edmonds's convictions except for count two and remand for resentencing on count one.

## II. Discussion

### A. "Other Crimes" Evidence

Edmonds argues that the district court's erroneous admission of certain testimony requires reversal. During the second trial, Harrison testified that he sold drugs for Edmonds "over a hundred" times during the previous nine years. Trial 2 Tr. (Tr. 2) vol. I at 173. Edmonds makes three arguments in an effort to establish the inadmissibility of this and related testimony.[2]

1. Pre-trial Notice of "Other Crimes" Evidence

Edmonds first claims that the government did not give him pre-trial notice of Harrison's proposed "other crimes" evidence. Before the first trial, Edmonds had requested notice of any prosecution plans to use such evi-

---

1. In 1990, section 405(a) of the Controlled Substances Act, codified at 21 U.S.C. § 845(a), was transferred to 21 U.S.C. § 860. Crime Control Act of 1990, Pub.L. No. 101–647, sec. 1214, § 860, 104 Stat. 4789, 4833 (1990). We refer hereinafter to 21 U.S.C. § 860 rather than 21 U.S.C. § 845.

2. Edmonds's related complaint that the prosecution misrepresented to the trial judge the thrust of an earlier ruling is meritless. At the first trial the court had allowed the prosecutor to ask Harrison "How would you characterize your relationship with Mr. Edmonds?" and "When did you first begin obtaining cocaine for Mr. Edmonds?" Trial 1 Tr. (Tr. 1) vol. I at 98. At the second trial, defense counsel objected to the prosecution's opening statement on the ground that the statement improperly referred to uncharged conduct. In response, the prosecutor first stated that "[t]he court did [at the first trial]

permit me to go into the prior transactions that Mr. Edmonds had, Mr. Harrison's relationship." Tr. 2 vol. I at 82. She then stated: "You did let me go into, just in general, the relationships that Mr. Harrison had with Mr. Edmonds." *Id.* at 83. Edmonds insists that the prosecutor misstated the court's ruling made at the first trial. We disagree. Taken alone, the prosecutor's statement that the judge permitted her to "go into the prior transactions" might have been misleading. She continued, however, with a reference to Edmonds's and Harrison's "relationship." Moreover, her second (and clearer) statement claimed only that the judge had previously permitted testimony "just in general" about the "relationship" between Harrison and Edmonds. Questions about Edmonds's and Harrison's relationship were in fact permitted at the first trial. *Id.* at 82–83. That is all the prosecution claimed.

dence. *See* Trial 1 Tr. (Tr. 1) vol. I at 99. Nevertheless, he contends he received no notice before the prosecution introduced Harrison's testimony about his "other crimes" at the second trial. His lack of notice complaint fails for two reasons.

■ First, at the time Edmonds was tried the prosecution was under no obligation to notify him of its intent to use "other crimes" evidence. In May 1991, when Edmonds's second trial took place, Rule 404(b) contained no express notice requirement. 22 Charles A. Wright and Kenneth W. Graham, Jr., *Federal Practice and Procedure* § 5249 (1978) ("Congress declined to add a notice requirement to Rule 404(b)"). The decision Edmonds relies on merely suggested that the prosecution notify defense counsel. *See United States v. Foskey*, 636 F.2d 517, 526 n. 8 (D.C.Cir.1980) ("We would suggest that in future cases the Government exercise the discretion given it by Fed.R.Crim.P. 12(d)(1) and notify the defense before trial of its intention to introduce any evidence of prior bad acts."). The subsequent amendment to Rule 404(b), requiring the prosecution to notify the defendant of its intent to use "other crimes" evidence, does not support Edmonds because it became effective on December 1, 1991, several months after his second trial ended.[3]

Even assuming a notice requirement, the first trial itself provided sufficient notice of the government's evidence. At that time, Harrison testified that he had bought drugs from Edmonds for nine years, Edmonds sometimes paid him to sell drugs and he had "done this before." Tr. 1 vol. I at 98, 133. The prosecutor asked Harrison to describe his drug purchases from Edmonds during the nine year period. *Id.* at 98. Disallowing the question, the court ruled that the prosecutor "can develop whatever [Harrison's] role was in the conspiracy and Mr. Edmonds in the introduction [sic] of these drugs, period." *Id.* at 101. At the second trial, the prosecutor asked Harrison whether he entered into "any kind of business transaction with Mr. Edmonds" and on "approximately how many [prior] occasions." Tr. 2 vol. I at 172. The difference between Harrison's first trial and second trial testimony is that during the latter Harrison was asked about the number of times he and Edmonds had sold drugs together. The abbreviated, albeit focussed, nature of the questions in the second trial did not alter the general nature of the testimony so as to deprive Edmonds of notice.

### 2. Exclusion under Rule 404(b)

■ Edmonds argues that the prosecution did not establish that Harrison's testimony was within Rule 404(b). Edmonds relies on the prosecutor's statement at trial that she sought to use the testimony to show "prior contact" with Edmonds. Because the rule does not expressly allow "other crimes" evidence to show prior contact, Edmonds argues that the evidence was inadmissible. Nonetheless, the government used Harrison's testimony for a permissible purpose. In *United States v. Clarke*, 24 F.3d 257 (D.C.Cir.1994), the defendants were charged with conspiring to possess, and possessing, with intent to distribute cocaine. One defendant testified that he and the other defendants had in the past engaged in numerous drug transactions together. We found the testimony admissible to show intent. Because the testimony was used for a permissible purpose, *see* Fed.R.Evid. 404(b) (other crimes evidence admissible to prove "intent, preparation, plan"), and not to prove the defendant's bad character, its admission did not violate Rule 404(b). Here, the government introduced the "one hundred times" testimony to show that Harrison expected to receive payment from Edmonds for acting as a middleman. At trial, Edmonds attempted to establish that Harrison supplied the drugs. The government sought to prove instead that Edmonds was the supplier. With Edmonds

---

**3.** Federal Rule of Evidence 404(b) now reads: Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

as the supplier, the government wanted to establish why Harrison sold Edmonds's drugs, a legitimate inquiry under Rule 404(b). *See* Fed.R.Evid. 404(b) (other crimes evidence admissible to prove "motive").

3. Exclusion under Rule 403 Balancing

■ Edmonds next argues that Rule 403 required exclusion of Harrison's testimony. Rule 403 provides: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice...." Edmonds claims Harrison's testimony had little probative value because the last alleged transaction between Edmonds and Harrison ended in 1988, two years before the drug transaction charged in this case. He argues the testimony was instead highly prejudicial because it may have led the jury to convict based "entirely on accused's propensity to offend again."

■ Edmonds's Rule 403 argument also fails. As discussed above, Harrison's testimony was offered to explain why he sold drugs for Edmonds. The evidence was "damaging," as Edmonds claims, but there was little danger of unfair prejudice because the prosecutor never argued an impermissible inference and did not emphasize the testimony. Moreover, a Rule 403 decision is reviewed only for a "'grave abuse' of discretion," *United States v. Johnson*, 970 F.2d 907, 912 (D.C.Cir.1992) (quoting *United States v. Payne*, 805 F.2d 1062, 1066 (D.C.Cir.1986)), a standard not met here.

■ Finally, even if Harrison's testimony was erroneously admitted, the error was harmless. As described in detail by the district court, *United States v. Edmonds*, 765 F.Supp. 1112, 1116–18 (D.D.C.1991), the evidence against Edmonds *aliunde* the "other crimes" evidence was strong and renders any evidentiary error harmless.[4]

**B. Plea Agreement**

■ Under section 5K1.1 of the United States Sentencing Guidelines (guidelines), the sentencing court may depart from the guidelines when the government makes a motion "stating that the defendant has provided substantial assistance in the investigation or prosecution of another person." In the District of Columbia, a departure committee decides whether a defendant's assistance has been substantial enough to warrant filing a section 5K1.1 motion. Like many defendants facing drug charges, Harrison entered a plea agreement with the government. Letter from Assistant United States Attorney Patricia M. Haynes to Ferris Bond, Harrison's Counsel (Appellee's Record Material at Tab A). He agreed to plead guilty to conspiracy to distribute fifty grams of cocaine base. *Id.* at 1 ¶ 2. In return, the prosecution agreed that "[i]f Mr. Harrison cooperates fully and testifies truthfully about all matters at trial, the nature and extent of his cooperation will be brought to the attention of the departure committee for possible consideration that the government will file a departure letter under 18 U.S.C. 3553e/5K1.1 on Mr. Harrison's behalf." *Id.* at 3 ¶ 9.

Edmonds contends that Harrison's plea agreement made Harrison's trial testimony inherently unreliable. According to Edmonds, Harrison's plea agreement created a "risk of perjury [by Harrison] so great that [Edmonds's] due process right to a fair trial was violated." Edmonds uses both text and testimony in an effort to show that Harrison's plea agreement conditioned the government's section 5K1.1 motion on Edmonds's conviction.

First, the plea agreement required that Harrison "provide[ ] substantial assistance to the government in the investigation and prosecution of violations of criminal law." *Id.* at 2 ¶ 4 (paragraph four of the standard District of Columbia U.S. Attorney plea agreement). Second, Harrison testified at trial that he understood the plea agreement to require him to give "suitable testimony." Tr. 2 vol. I at 197. Edmonds's argument is foreclosed both by the record and by circuit precedent.

First, the record manifests that Harrison understood the agreement only to require

---

4. Regarding Edmonds's related insufficiency argument, we conclude that the evidence against Edmonds was plainly sufficient to convict and we refer to the district court's detailed treatment of this issue. *Edmonds*, 765 F.Supp. at 1116–18.

him to testify truthfully. He stated that "to my understanding, I just have to sit here and tell the truth about what happened." Tr. 2 vol. I at 198. In view of this testimony, his use of the word "suitable" to describe the type of testimony he was expected to give does not at all establish that Harrison believed his testimony had to ensure Edmonds's conviction in order for the government to make a section 5K1.1 motion.

Moreover, the holding in *United States v. Tarantino*, 846 F.2d 1384, 1418 (D.C.Cir. 1988), forecloses Edmonds's argument. That case involved an accomplice/witness who testified against a narcotics defendant after the prosecution promised to advise the witness's sentencing judge of the "value" of his testimony. The defendant argued that conditioning the witness's sentence on the "value" of his testimony created an "overwhelming" incentive to lie. This Court acknowledged that the "value" condition might increase the witness's incentive to lie but we nevertheless permitted the testimony. We reasoned that the "value" requirement did not necessarily condition the prosecution's motion for a downward departure on the success of the prosecution; instead, the agreement expressly required only truthful testimony and was the subject of extensive cross-examination. Similarly, Harrison's plea agreement did not create an incentive to lie because the agreement simply required truthful testimony and was subject to cross-examination. *Accord United States v. Fallon*, 776 F.2d 727, 733 (7th Cir.1985) (approving "performance deals" that require truthful testimony).

■ Finally, as the appellant concedes, because he did not object at trial to Harrison's plea agreement, we review his argument for plain error only. (Appellant's Br. at 27.) As our above discussion illustrates, Edmonds has not shown that the district court's admission of Harrison's testimony constitutes error, much less "plain error."

### C. Schoolyard Statute and the Commerce Clause

■ Edmonds claims that his conviction under 21 U.S.C. § 860 (schoolyard statute)

should be vacated because the law exceeds the power of Congress to regulate interstate commerce. The schoolyard statute prohibits distributing drugs within one thousand feet of a school. 21 U.S.C. § 860(a) ("distributing ... in or on, or within one thousand feet of, the real property comprising a public or private elementary, vocational, or secondary school"). Edmonds claims the law is unconstitutional under the Supreme Court's most recent interpretation of the commerce clause. *See United States v. Lopez*, — U.S. —, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995). Edmonds did not challenge the law below; nevertheless, he argues that we may consider the merits of his *Lopez* argument because *Lopez* qualifies as a "supervening decision." *See United States v. Washington*, 12 F.3d 1128, 1139 (D.C.Cir.1994).

We recently rejected the same argument in *United States v. Baucum*, 66 F.3d 362 (D.C.Cir.1995). In *Baucum*, we refused to consider the merits of the appellant's commerce clause challenge to the schoolyard statute because "neither the Supreme Court nor this circuit had definitively ruled that this statute, or even one like it, fell within Congress' commerce clause powers." 66 F.3d at 364. The same rationale precludes us from reaching the merits of Edmonds's challenge: there was no reason for Edmonds "to assume at the time of trial that his challenge would be futile."[5] *Id.*

### D. Sentencing Errors

Edmonds was convicted of conspiring to distribute crack (count one), aiding the distribution of crack (count two) and aiding the distribution of crack near a school (count three). The district court sentenced Edmonds to 175 months' imprisonment on each of the three counts. Edmonds and the government agree that the district court miscalculated Edmonds's sentence.

■ Under the guidelines, Edmonds's criminal history category is I. The sentencing range on each of the first two counts is

---

5. That appellant's second trial took place in May 1991, before the Fifth Circuit's opinion in *United States v. Lopez*, 2 F.3d 1342 (5th Cir.1993),

*aff'd*, — U.S. —, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995), does not affect our decision.

121–151 months. The 175 months' imprisonment sentences imposed for counts one and two are therefore outside the permissible range. Moreover, Edmonds cannot be convicted of both distribution and distribution near a school under the same facts. *See United States v. Whren,* 53 F.3d 371, 376 (D.C.Cir.1995) (holding section 841(a)(1) to be lesser included offense of 21 U.S.C. § 860(a)). Accordingly, Edmonds's conviction on count two must be vacated.[6] The 175 month prison term is proper as to count three because the schoolyard statute carries an enhanced penalty. 21 U.S.C. § 860(a).

For the foregoing reasons, we affirm Edmonds's conviction on counts one and three, vacate his conviction on count two and remand his case for resentencing on count one.

---

**6.** We commend the government for bringing this issue to our attention.