UNITED STATES of America,

v.

Jose GARCIA, a/k/a "Rick Garcia".

Crim.A. No. 00–216.

United States District Court,
E.D. Pennsylvania.

March 8, 2001.

Anita D. Eve, U.S. Attorney's Office, Philadelphia, PA, for U.S.

## MEMORANDUM

EDUARDO C. ROBRENO, District Judge.

Jose Garcia was sentenced to a term of imprisonment of forty months for violation of 18 U.S.C. § 841(a). At the sentencing, the court denied Garcia's request for a downward departure pursuant to section 5K2.0 of the Sentencing Guidelines. Garcia has appealed this ruling of the court. Pursuant to Local Rule of Appellate Procedure 3.1, the court issues this memorandum to explain further the basis for its denial Garcia's motion for downward departure.

At his sentencing, Garcia argued that, because the court first limited and ultimately prevented him from engaging in proactive cooperation prior to entering his guilty plea in this case, he was denied the opportunity to obtain the Government's recommendation for a downward departure under 5K1.1 of the Sentencing Guidelines. Garcia argued that, because the court's refusal to allow him to cooperate fully ultimately deprived him of eligibility for a section 5K1.0 downward departure recommendation from the Government, he was entitled to a downward departure under section 5K2.0. The court concludes that, contrary to Garcia's assertion, Garcia was afforded individualized review of his request to cooperate, and, in fact, was

granted the opportunity to cooperate proactively for a reasonable period of time and in a manner approved by the court. Given that Garcia was afforded a reasonable opportunity to cooperate, but failed to do so, Garcia's motion for downward departure under 5K2.0 was properly denied.

## I. BACKGROUND

In April 2000, Garcia was indicted for violating 21 U.S.C. § 841, distributing over five hundred grams of cocaine. The Magistrate Judge released him on bond and set bail conditions that included the requirement that he wear an electronic ankle bracelet ("ankle bracelet") which aids Pretrial Services and Probation in monitoring a defendant's whereabouts when on release pending trial or sentencing.

On July 7, 2000, the Government filed a motion requesting a modification of the bail conditions, seeking removal of the requirement that Garcia wear the ankle bracelet. The Government based its request on the defendant's stated desire to engage in proactive cooperation.[1] The Government argued that "[t]o enable the defendant to engage in his cooperative efforts, the parties respectfully request a modification of his conditions of bail which will eliminate the requirement of the electronic monitoring...." *See* doc. no. 12. The Government failed to explain how the ankle bracelet hindered such cooperation or what alternative forms of supervision the Government was requesting. Four days later, the court denied the motion, and, in a footnote to the order, stated: "No proactive cooperation is permitted without approval of the court." *See* doc. no. 13.

1. The term "proactive cooperation" is generally understood to mean that the defendant will engage in some type of undercover work on behalf of the Government, such as wearing a wire and/or meeting face to face with persons suspected of involvement in criminal activity. This term is in contrast with "non-proactive cooperation" which is generally understood to mean that the defendant will provide historical information to the Government and/or agrees to testify in court proceedings against persons alleged to have committed criminal conduct.

After Garcia indicated his desire to change his plea to guilty, the court held a change of plea hearing on August 11, 2000. By oral motion to the court at the hearing, defense and Government counsel requested a continuance to permit Garcia to obtain further surgery on an ankle he had previously injured and to allow him to cooperate proactively. *See* Tr. 8/11/00, doc. no. 37. The court granted the continuance in order that Garcia obtain medical care. Although the court initially indicated that Garcia would *not* be allowed to cooperate proactively,[2] after reviewing the matter further with counsel, the court agreed to take the matter under advisement.[3] The same day, the court issued an order continuing the change of plea until October 11, 2000 but not addressing the request for permission to engage in proactive cooperation. *See* doc. no. 17.

By letter dated September 13, 2000, Government counsel requested a telephone conference to discuss scheduling. Pursuant to the request, the court held the conference on September 22, 2000. During the course of the telephone conference, Government counsel indicated that Garcia needed additional time to have ankle surgery and, therefore, requested a continuance of the change of plea hearing. Defense counsel then orally asked the court to reconsider its earlier decision and to allow Garcia to cooperate proactively by making an introduction of an undercover agent to Garcia's source of drugs. After further discussing the matter with counsel,

the court agreed to permit Garcia to cooperate proactively in the manner suggested by defense counsel, i.e., allowing defendant to make an introduction of his drug source to an undercover agent, prior to the date of the hearing for the change of plea.[4] Government counsel concurred that the agents on the case "could put [an introduction] together in a relatively short period of time...." At no time during the hearing did counsel for either side indicate the need for removing the ankle bracelet so the defendant could make the introduction, or point out to the court that, if the ankle bracelet was not removed, the cooperation could not take place. Nor did the parties request that Garcia be permitted to engage in any other type of proactive cooperation other than the one introduction.[5] Based on the representations made by counsel at the hearing, the court continued the change of plea hearing to October 30, 2000 to allow both the medical treatment and the proactive cooperation to take place. *See* Tr. 9/22/00, doc. no. 38. Therefore, under the court's ruling, the defendant had thirty-eight days to make the introduction sought by the Government.

On October 27, 2000, three days before the plea hearing and thirty-five days after the telephone conference during which the court consented to Garcia's proactive cooperation, the Government filed yet another motion to modify the bail conditions. The Government also sought a continuance of the change of plea hearing. *See* doc. no. 24. This time, the Government advised

---

2. The court stated: "I think, for rehabilitation purposes, he should be—I will agree to continue the sentencing—I mean the plea for 60 days, again without proactive cooperation being permitted." Tr. 8/11/00 at 6.

3. The court stated: "Let me think about this, and I will then get back to you." Tr. 8/11/00 at 9.

4. The court stated: "Well, why don't we go ahead and do that and he will be limited to that introduction." Tr. 9/22/00 at 8, doc. no. 38.

5. In fact, Government counsel indicated that the one introduction would be sufficient for Garcia to earn the Government's recommendation for a downward departure under section 5K1.1 of the Sentencing Guidelines. Tr. 9/22/00 at 7.

the court that the ankle bracelet had never been removed from Garcia, and, therefore, according to the Government, Garcia had been unable to provide proactive cooperation.

On October 30, 2000, the court heard the Government's joint motion for modification of the bail conditions and a continuance of the change of plea hearing. The Government argued that Garcia had not provided the introduction of the undercover agent to his drug source because the ankle bracelet had never been removed. After hearing argument on the matter, the court denied the joint motion to modify bail conditions and for continuance of the change of plea hearing. The court reasoned that Garcia, his lawyer, Government counsel, and the agent in charge all knew the defendant had a thirty-day-plus window of time to arrange the introduction, but that the co-operation had not yet occurred. *See* Tr. 10/30/00 at 3–6. Furthermore, an additional delay of the plea would implicate the public interest. *United States v. Poston,* 902 F.2d 90, 96 (D.C.Cir.1990) ("[T]he public's interest in the dispensation of justice that is not unreasonably delayed has great force.").[6] Based on this reasoning, the court denied the Government's joint motion for a continuance or a modification of the bail. The court then accepted the defendant's guilty plea and set a scheduling date for sentencing.[7]

Prior to the sentencing hearing, Garcia filed a motion for downward departure pursuant to section 5K2.0 of the Sentencing Guidelines.[8] Citing case law from three circuits outside the Third Circuit, Garcia argued that a downward departure under section 5K2.0 was applicable in this case because the court's failure to order the removal of the ankle bracelet effectively prevented him from earning a request for a downward departure from the Government, pursuant to section 5K1.1 of the Sentencing Guidelines. Garcia asserted

**6.** The court stated that "the public doesn't expect people to be sitting around waiting to enter a plea." Tr. 10/30/00 at 5.

**7.** After entering his plea of guilty, Garcia's release was controlled by the provision of 18 U.S.C. § 3143(a)(2), as Garcia had pled guilty to a crime under the Controlled Substances Act, 21 U.S.C. § 801 et seq. Section 3143(a)(2) mandates that a defendant who has been found guilty of a violation of 18 U.S.C. § 841(a) must be detained unless the court "finds by clear and convincing evidence that the person is not likely to flee or pose a danger to any other person or the community." 18 U.S.C. § 3143(a)(2)(B). The parties agreed that Garcia met this condition for release pending his sentence. Furthermore, the court found that Garcia's need for surgery on his ankle represented an "exceptional circumstance," under 18 U.S.C. § 3145(c), which warranted Garcia's release for thirty-days in order to have ankle surgery. The court imposed a number of conditions of release on Garcia during this thirty-day period, including wearing an ankle bracelet and twenty-four hour home confinement. Neither counsel opposed these conditions of release or requested that these thirty-days be used by Garcia to proactively cooperate. *See* Tr. 10/30/00 at 28–33. On November 30, 2000, Garcia reported to the Bureau of Prisons to begin his detention pending sentencing.

**8.** Section 5K2.0 read, in relevant part:

Under 18 U.S.C. § 3553(b), the sentencing court may impose a sentence outside the range established by the applicable guidelines, if the court finds "that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." Circumstances that may warrant departure from the guideline range pursuant to this provision cannot, by their very nature, be comprehensively listed and analyzed in advance. The decision as to whether and to what extent departure is warranted rests with the sentencing court on a case-specific basis....

United States Sentencing Commission, *Guidelines Manual* § 5K2.O.

that the trial court may not categorically deny a defendant the opportunity of providing proactive cooperation in order to earn a 5K1.1. At the sentencing hearing on February 2, 2001, Government counsel stated that the defendant was not entitled to a 5K1.1 departure but agreed that the defendant should be entitled to the benefits of a 5K2.0 departure. Tr. 2/2/01 at 26–27, doc. no. 46.

The court found that the defendant was not prevented from providing proactive cooperation, but instead, the defendant failed to take advantage of the court order allowing limited proactive cooperation for a thirty-eight day period of time. Therefore, the court denied the motion for downward departure under 5K2.0.

## II. DISCUSSION

■ Under 18 U.S.C. § 3142 ("section 3142"), the district court has the authority to establish the conditions of release of a defendant pending trial. Under section 3142(c), the court may impose conditions of release if it finds that they are necessary to "reasonably assure the appearance of the person required and the safety of any other person and the community." 18 U.S.C. § 3142(c)(1)(B). The enumerated conditions are not all inclusive. Additionally, the court has discretion to impose "any other condition that is necessary to assure the appearance of the person as required and to assure the safety of any other person and the community." 18 U.S.C. § 3142(c)(1)(B)(xiv). The imposition of an ankle bracelet in order to ensure the availability of the defendant for trial is one of the conditions permitted under section 3142(c).

Although the Third Circuit has not considered whether a district court may include as a pretrial condition of release a limit or a complete prohibition on proactive cooperation, the Fourth, Eighth, and Tenth Circuits have addressed the issue. In these circuits, a district court abuses its discretion if it completely forecloses the ability of a willing defendant from proactively cooperating during the pretrial release period. *See United States v. Goossens,* 84 F.3d 697, 703 (4th Cir.1996) (noting district court committed clear abuse of discretion by imposing a ban on all proactive cooperation while defendant awaited sentencing); *United States v. French,* 900 F.2d 1300, 1301 (8th Cir.1990) (expressing disapproval of district court's categorical policy against proactive cooperation); *United States v. Vargas,* 925 F.2d 1260, 1265 (10th Cir.1991) (concluding district court may not adopt an "inflexible practice" against all proactive cooperation).

■ A common thread to all of these cases is that the district court failed to give the defendant's request individualized attention and prohibited all proactive cooperation during the pretrial release period based on the district court's own previously-adopted policy against allowing proactive cooperation in all cases. *See Goossens,* 84 F.3d at 703 (quoting trial judge as stating he does not "permit defendants who are on bond under Court control to be actively out on the street working or making contacts or doing anything like that"); *French,* 900 F.2d at 1301 (indicating district court had "policy of categorically forbidding defendants released on bond to go under cover for the police"); *Vargas,* 925 F.2d at 1264 (stating district court had "blanket rule" against proactive cooperation). Consistent with this approach, the Third Circuit has indicated its discomfort with district courts employing fixed policies when sentencing defendants. *See United States v. King,* 53 F.3d 589, 591 (3d Cir.1995) (rejecting district court's policy of reducing by three levels whenever granting a § 5K1.1 motion); *United States*

*v. Thompson*, 483 F.2d 527, 529 (3d Cir. 1973) (finding district court may not employ a policy of imposing a similar sentence for all defendants convicted of particular crime).[9]

*Goossens, French,* and *Vargas* are distinguishable because, in this case, the court gave Garcia's request individualized attention and neither prohibited all proactive cooperation from taking place, nor applied to Garcia's request to engage in proactive cooperation a universal policy prohibiting proactive cooperation in all cases.

The record shows that when initially confronted with a broad request by the Government to permit cooperation, without any specific detail as to the scope of the cooperation, the court denied it. *See* doc. no. 13. Later, when presented with a more specific request describing the nature of the cooperation, the court initially took the matter under advisement, *see* Tr. 8/11/00 at 9, and ultimately approved it, *see*

Tr. 9/22/00 at 8. Given that the court considered the request for proactive cooperation on at least three occasions, and that, after initially rejecting it, once it was explained, it approved it, a claim that the court prohibited Garcia from cooperating, applied a general policy of prohibiting all proactive cooperation, or failed to give Garcia's request individualized attention must fail. *See* 18 U.S.C. § 3142.

■ Garcia also argues that, even if the court approved some form of proactive cooperation, the court failed to order that the ankle bracelet be removed. According to Garcia, the failure to order the removal of the ankle bracelet rendered the opportunity to cooperate illusory. This argument fails to take into account that neither counsel requested the removal of the ankle bracelet at the September 22nd telephone conference, during which the court authorized proactive cooperation. Even assuming the court should have *sua sponte* or-

---

9. As the *Goossens* and *Vargas* courts explained, a universal policy on the part of the district court barring all proactive cooperation violates the rule that, in determining the nature of pretrial releases, the district court must consider the facts and circumstances of the defendant's specific case and give that case individualized attention. *See Goossens,* 84 F.3d at 703 (noting trial judge's policy prevented consideration of particular facts regarding defendant); *Vargas,* 925 F.2d at 1265 (noting trial court's policy failed to consider "individualized facts" of the defendant). The need for individualized assessment by the district court of each defendant's case in light of the particular facts of the case is also the general rule in this circuit. *See King,* 53 F.3d at 591 ("The sentencing jurisprudence … disapproves of sentencing 'practices' in favor of case-by-case consideration."); *Thompson,* 483 F.2d at 529 ("A fixed view as to sentencing is thus inconsistent with the discretion vested in the trial judge that he may fulfill his mandate to tailor the sentence imposed to the circumstances surrounding each individual defendant, and frustrates the operation of those rules set up to effect such a result.")

Furthermore, the *French* court indicated that a universal policy against proactive cooperation frustrated the goals of the Sentencing Guidelines which permitted proactive cooperation on the part of defendants. *See French,* 900 F.2d at 1302 (noting categorical policy against proactive cooperation was not "consistent with section 5K1.1 of the Sentencing Guidelines"). The Sentencing Guidelines reflect a notion that cooperation, whether proactive or not, is an important part of the American system of criminal justice. *See Goossens,* 84 F.3d at 704 ("Both Congress and the Sentencing Commission have recognized the importance of defendants' cooperation with law enforcement…."). The significance of cooperation is illustrated by the specific treatment it receives in the Sentencing Guidelines. *See* United States Sentencing Commission, *Guidelines Manual* § 5K1.1. Under the proper circumstances and consistent with the interests and safety of the public, cooperation by criminal defendants is encouraged. *See* 18 U.S.C. § 3142(c). A policy barring all proactive cooperation frustrates this purpose.

dered the removal of the ankle bracelet but failed to so in the first place, neither counsel nor Garcia himself informed the court during the first thirty-five days that proactive cooperation was to occur that there was a need to order the removal of the ankle bracelet for cooperation to take place. Consequently, Garcia's failure to cooperate proactively was not the result of the court prohibiting all proactive cooperation or failing to remove the ankle brace-let, as Garcia now contends, but rather resulted from his own failure to take advantage of the opportunity afforded.

■ At the hearing to determine the issues on appeal under Local Rule of Appellate Procedure 3.1, Garcia asserted that *any* restriction on the defendant's ability to provide proactive cooperation constitutes a per se abuse of discretion. Tr. 2/23/01 at 7–8, doc. no. 47. Under the defendant's theory, the court abuses its discretion when it limits during the pretrial release period the defendant's ability to cooperate either in form or in time, regardless of the reason for the limitation. This conclusion is without merit. Clearly, under 18 U.S.C. § 3142, the court must determine the conditions of release pending trial. If allowing proactive cooperation interferes with the court's mandate to "reasonably assure the appearance of the person or the safety of any other person," 18 U.S.C. § 3142(c), proactive cooperation may be restricted or even altogether prohibited. *See Vargas,* 925 F.2d at 1265 (stating "district courts have discretion to consider whether requested presentence releases should be allowed"). Ultimately, the court must determine whether under the circumstances of the case, and informed by the concerns expressed in section 3142(c), proactive cooperation is in the public interest, and if so, under what terms and conditions. The limitation that proactive cooperation be restricted to one intro-duction of an undercover agent to a drug source, which was to occur over a thirty-eight day window of time, was a reasonable exercise of the court's discretion.

## III. CONCLUSION

Because the court allowed Garcia to engage in limited proactive cooperation and because the court, in considering whether to permit such cooperation, did not base its decision on a policy or practice, but gave the defendant's request individualized attention, the defendant's motion for downward departure under section 5K2.0 was properly denied. As required by 18 U.S.C. § 3142, the court considered the facts of the case and determined that proactive cooperation requested by the Government was permissible, but limited that cooperation to an introduction by the defendant of an undercover agent to the defendant's source of drugs and imposed a thirty-eight day timetable to complete the introduction.

An appropriate order follows.

### ORDER

**AND NOW,** this 8th day of **March, 2001,** upon consideration of defendant's motion for downward departure pursuant to section 5K2.0 of the Sentencing Guidelines (doc. no. 34), it is hereby ORDERED that the motion is **DENIED.**

**AND IT IS SO ORDERED.**